Willie FOSTER, Jr., Petitioner,

v.

E. C. WATKINS, Superintendent, Stanly County Department of Correction, and the State of North Carolina, Respondents.

No. C–C–75–261.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Nov. 8, 1976.

Michael P. Carr, Charlotte, N.C., for petitioner.

Richard N. League, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., for respondents.

## ORDER

McMILLAN, District Judge.

Willie Foster, Jr., was tried before a jury in Mecklenburg County, North Carolina, Superior Court in February, 1973, and was found guilty of burglary in the first degree and was sentenced to life imprisonment.

He seeks a new trial based on prejudicial cross-examination by the prosecuting attorney with reference to unproved crimes.

State remedies have been exhausted.

The evidence for the prosecution showed that an unidentified man wearing a mask or stocking over his head and a jacket with two white stripes down the sleeves entered a private home on Kentucky Avenue in Charlotte, grasped the housewife and was chased away. A television set and a record player were missing. Some flower pots had been moved from one location to another in the house.

None of the missing property was ever recovered.

No identification was ever made of the burglar nor of any of the described clothing except as follows:

Police Officer Cobb testified that he lifted three latent fingerprints from one plastic flower pot by placing scotch tape over the prints. These latent prints were put on a 3″ x 5″ card and taken to the police laboratory. There, they were compared with other prints; one was identified as a

print of Willie Foster, Jr. Based on this lead, the defendant was arrested and charged with the crime.

At the time of the trial the original 3″ x 5″ card had been misplaced. The testimony introduced was a photographic "blow-up" of the print. Although the officer testified that the "blow-up" was an enlargement of the original latent fingerprint, it bore no identifying data itself.

The chain of evidence by which secondary proof of the fingerprint was made was adequate to permit the introduction of the fingerprint evidence. The weakness and second-hand nature of the fingerprint evidence is, however, of relevance since it was the only evidence of any kind which connects the defendant in any manner with the crime.

The defendant and his family denied all connection with the crime; testified that he was at home in bed when the crime was committed and that he did not own a ski mask or a dark jacket with white stripes; and proved a good character and reputation. Defendant had no prior criminal convictions.

Apparently some other burglaries had occurred and the petitioner Foster was charged with the commission of these other burglaries, six in number. However, he had not been tried for any of them and never has been tried for any of them. In fact, all of those six other burglary charges were dismissed shortly after the conviction of the defendant in the present case was upheld by the Supreme Court of North Carolina.

The Supreme Court of North Carolina upheld the conviction by a vote of five to two, with then Chief Justice Bobbitt and present Chief Justice Sharp dissenting.

The prejudicial cross-examination of the defendant by the prosecuting attorney is set out in Chief Justice Bobbitt's dissenting opinion (State v. Foster, 284 N.C. 259 at 281–283, 200 S.E.2d 782 at 798), as follows:

I

"Q. Now, I will ask you if on October 20, of 19, excuse me, on August 3, of 1971 if you didn't break into Martha W. Pitts' house . . .

"Mr. Hicks: Objection.

"Q. At 2416 Rozzelles Ferry Road here in the city?

"Mr. Hicks: Objection."

"This is the subject of Exception No. 23."

II

"Q. I will ask you if you didn't break in the residence of James Sinclair at 312 Center Street on October 11, 1971, by going into the front door and reaching up and unscrewing with your fingers a light bulb in the ceiling?

"Mr. Hicks: Objection.

"Court: Overruled.

"Q. Did you or did you not?

"A. What you mean 'did I'? No, I didn't."

"This is the subject of Exception No. 24."

III

"Q. I will ask you if you didn't break into the residence of Lonnie Bell Wallace at 217 South Turner Street? How far is South Turner Street from there on Center Street?

"Mr. Hicks: Objection.

"A. I couldn't tell you.

"Q. I will ask you if you didn't break into Lonnie Bell Wallace's house on February 20, 1971, between 6:30 and 11:00 o'clock and by breaking out the center glass window in the front door?

"Mr. Hicks: Objection.

"Court: Overruled.

"A. Sure didn't."

"This is the subject of Exception No. 25."

IV

"Q. I will ask you if you did not break into the residence of Teretha Phillips at 2224 Roslyn Avenue on the 23rd of May, 1971, by prying open her kitchen window and breaking out the window pane?

"Mr. Hicks: Objection.

"Court: Overruled.

"A. Sure didn't."

"This is the subject of Exception No. 26."

V

"Q. I will ask you if on the 17th of September, 1971, you didn't break into

the home of Shirley Torrence at 514 Honeywood, Apartment No. 3, by taking the screen off the window and breaking out the front window?

"Mr. Hicks: Objection.

"Court: Overruled.

"A. Sure didn't."

"This is the subject of Exception No. 27."

VI

"Q. And I will ask you if you on the 25th day of July 1971 you didn't break into the residence of Roy Lee Armstrong at 201 South Turner Avenue?

"Mr. Hicks: Objection.

"Court: Overruled.

"A. Sure didn't."

"This is the subject of Exception No. 28."

No evidence was introduced or suggested to prove that the defendant committed *any* of the acts mentioned in the cross-examination.

The conviction depended totally upon secondary proof of the single latent fingerprint on a flower pot in the house where the burglary occurred.

█ Ordinarily federal habeas corpus does not lie to correct error in cross-examination or in the exclusion or admissibility of evidence. However, where cross-examination reaches such a level of unfairness that it inescapably prevents a fair trial, such conduct, like other violations of due process of law, may be made the basis of habeas corpus relief. *See MacDonald v. Wainwright,* 466 F.2d 1136 (5th Cir. 1972); *Bruce v. Estelle,* 483 F.2d 1031 (5th Cir. 1973).

It must be borne in mind that the prosecution's case depended upon a number of extended inferences from one limited piece of evidence—second-hand and questionable evidence of a single latent fingerprint on a flower pot. From the second-hand evidence that a fingerprint was found on a flower pot, the jury were asked to draw inferences (a) that the photograph they saw was in fact the photograph of the original latent fingerprint; (b) that this was in fact the defendant's fingerprint; (c) that it had been placed upon the flower pot while the flower pot was in the prosecuting witness's house; (d) that it had been placed upon the flower pot at *the time of the crime* rather than at some other time; (e) that it had been placed upon the flower pot by one who was then and there perpetrating a burglary; (f) that the person then and there perpetrating the burglary was the defendant; (g) that the defendant at such time in fact did have the necessary *intention* or mental state necessary to support conviction of a crime serious enough to justify taking his life.

█ To allow the prosecutor to ask questions about other alleged crimes, completely unsupported by fact or evidence, in the detail which was allowed here, makes a shambles of fair trial and deprives the defendant of due process of law.

Foster is entitled to a new trial at which no examination with reference to the six alleged previous wrongful acts should be allowed.

IT IS THEREFORE ORDERED that the writ of habeas corpus is granted; that the conviction is set aside; that by February 15, 1977, defendants afford the petitioner a new trial, containing no references to the six alleged previous wrongful acts, or release him; and that they advise the court by December 15, 1976, which course of action they intend to follow.