**Lee Roy HARGRAVE, Jr.**

v.

**Robert M. LANDON, et al.**

**Civ. A. No. 83–0405–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

April 12, 1984.

---

Lee Roy Hargrave, pro se.

Jacqueline G. Epps, Senior Asst. Atty. Gen. of Va., Richmond, Va., for Landon.

## MEMORANDUM

MERHIGE, District Judge.

Petitioner, proceeding *pro se* and *in forma pauperis*, filed this petition for a writ of habeas corpus on July 7, 1983. Respondents filed a motion to dismiss on September 22. Petitioner was notified of an opportunity to respond on September 28 which he did on October 31. This motion is now ripe for consideration. The Court has jurisdiction pursuant to 28 U.S.C. § 2254.

Petitioner attacks a judgment rendered in the Circuit Court of the City of Petersburg on May 6, 1975, wherein he was convicted of murder in the first degree and sentenced to life imprisonment. Petitioner, a nurse's aid at Petersburg General Hospi-

tal at the time of the crime, was found to have injected an elderly patient with a fatal dose of the drug lidocaine. Petitioner alleges that his due process rights were violated in four distinct instances during the course of his trial. Petitioner's claims are:

(1) The trial court failed to grant petitioner's motion for a change of venue;

(2) Because a "carnival atmosphere" surrounded the trial, the trial Court should have, but did not, sequester the jury *sua sponte;*

(3) The trial court improperly admitted evidence of other crimes;

(4) The evidence was insufficient as a matter of law to sustain petitioner's conviction.

Petitioner's first claim is that his conviction and sentence lack fundamental fairness because the trial court refused a motion for a change of venue despite what was alleged to be considerable, seriously prejudicial, pre-trial publicity.

Section 2254(d) of Title 28 addresses the limitations on the authority of a federal habeas court. In particular, the federal court must accord a presumption of correctness to the factual findings of the State courts, unless one of the eight exceptions enumerated in 28 U.S.C. § 2254(d) justifies a federal court's disregard of that presumption. Section 2254(d)(8) provides that one such exception occurs when the federal court "on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record."

In *Harris v. Pulley,* 692 F.2d 1189, 1199–1200 (9th Cir.1982), remanded on other grounds, —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the Court of Appeals was presented with a claim that prejudicial publicity had denied petitioner an impartial jury and considered the question of what part of the record a federal habeas court must review in order to determine whether

the record fairly supports the State court's factual determination:

> Where prejudicial pre-trial publicity is alleged, the relevant parts of the State court record, include, at a minimum, copies of the newspaper articles and, if available, any transcripts of television and radio broadcasts. Because a federal court sitting in habeas has a duty "to independently evaluate the *voir dire* testimony of the empaneled jurors," *Irvin v. Dowd,* 366 U.S. 717, 723 [81 S.Ct. 1639, 1642, 6 L.Ed.2d 751] ... (1961), the entire transcript of the *voir dire* testimony should also be examined. It is only after examination of such relevant parts of the record that the district court can determine that the state court findings are supported by the record.

Before the Court at present is the evidence of pre-trial publicity stipulated to have been before the trial judge: newspaper articles presented by petitioner in support of his initial motion for a change of venue or venire, later newspaper articles presented by petitioner in support of his renewal of that motion; a list of broadcasts by WXEX–TV and maps of the coverage area of WXEX–TV and WWBT–TV; lists of newspaper articles; and twenty-five affidavits submitted by the Commonwealth. Also before the Court is the transcript of the March 6, 1975, venue hearing as well as the transcript of the complete *voir dire* of the venire.

For the reasons set forth below, the Court agrees with the trial court that a change of venue was not warranted.[1]

 To show that he was denied a fair trial or an impartial jury due to adverse pre-trial publicity, a petitioner must ordinarily demonstrate an actual, identifiable prejudice attributable to that publicity on the part of members of his jury. *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). The sole exception to this conventional approach of showing actual prejudice was addressed by the

---

1. Petitioner's argument on rebuttal that the trial judge employed the incorrect standard in assessing the motion for a change of venue raises an

issue of State law, not cognizable on federal habeas corpus. *Grundler v. North Carolina,* 283 F.2d 798 (4th Cir.1960).

Supreme Court in *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *see also Mayola v. State of Alabama,* 623 F.2d 992, 996 (5th Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981).

In *Rideau,* petitioner, within hours of his arrest for robbery, kidnapping, and murder, made a detailed oral and written confession to these crimes. On the following morning, a sound film was made of an interview between petitioner and the sheriff in which he again admitted his guilt. The film was broadcast on a local television station for three successive days. The Supreme Court held:

> [I]t was a denial of due process of law to refuse the request for a change of venue after the people of Calcasieu Parish had been exposed repeatedly and in depth to the spectacle of Rideau personally confessing in detail to crimes with which he was later to be charged.... Any subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality.... [W]e do not hesitate to hold, without pausing to examine a particularized transcript of the *voir dire* examination of the members of the jury, that due process of law in this case required a trial before a jury drawn from a community of people who had not seen and heard Rideau's televised "interview."

*Rideau* 373 U.S. at 726–727, 83 S.Ct. at 1419–1420.

Petitioner argues that the pre-trial publicity in his case was so intense and pervasive that it must of necessity be prejudicial and that the *voir dire* of the jury need not be examined. However, the tenor of the newspaper articles presented to the trial court by the petitioner were primarily informative and factual.[2] True, the slayings alleged were themselves macabre; but it is impossible to conceive of a situation where a nurse's assistant allegedly injected a number of elderly patients with a deadly drug and there not be extensive publicity. Viewing the months of coverage by the local newspapers as a whole, it is commendable that their treatment of the story appeared so objective. Indeed, they published interviews with both the Commonwealth's Attorneys and defense counsel. Petitioner's parents and friends were interviewed, and their protestations of his innocence were reported regularly.[3]

Nothing in the newspaper reports reveal inflammatory publicity analagous to defendant Rideau's televised confession of the crimes for which he was later charged and to which he later pled not guilty. It is worth noting that "only in *Rideau* itself has the Supreme Court reversed a state court conviction on this basis of presumed prejudice deriving solely from pre-trial publicity." *Mayola* at 997.

In *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), six murders were committed in the vicinity of Evansville, Indiana; the crimes, extensively covered by the news media in the locality, aroused great indignation and excitement throughout Vanderburgh County and adjoining Gibson County. Petitioner was arrested, and shortly afterwards, the prosecutor of Vanderburgh County and Evansville police officials issued press releases, intensively publicized, stating that petitioner had confessed to these six murders. Granted a change of venue to Gibson County, petitioner sought another change of venue to some county sufficiently removed from the Evansville locality that a fair trial would not be prejudiced. The build-up of prejudice through pre-trial publicity was held by the Supreme Court to be "clear and convincing." *Irvin* at 725, 81 S.Ct. at 1644. The awaited trial of petitioner had become so notorious that curbstone opinions, not

---

**2.** The glaring exception was "Mad 'Doctor' In Search of Painless Death," *True Police Cases,* April, 1975. However, no evidence was presented as to the circulation of this publication.

**3.** *See, e.g.,* "Mrs. Hargrave Has Faith Roy is Innocent," *Petersburg Progress-Index.* Petitioner's argument that the Commonwealth formented harmful publicity, Memorandum in Support of Application at 10–15, is utterly without basis in the record.

only as to petitioner's guilt, but as to what punishment he ought receive, were solicited and recorded on the public streets by roving reporters and broadcast over local stations. Indeed, headlines reported that "impartial jurors are hard to find." *Irvin* at 727, 81 S.Ct. at 1645. Unlike *Rideau,* where the Supreme Court found review of the *voir dire* unnecessary in the light of the prejudice presumptively created by pretrial publicity, here the Supreme Court did look at jury selection process and concluded that the petitioner had been denied an impartial jury.

> Here the "pattern of deep and bitter prejudice" shown to be present throughout the community, cf. *Stroble v. California,* 343 U.S. 181 [72 S.Ct. 599, 96 L.Ed. 872 (1952)] ..., was clearly reflected in the sum total of the *voir dire* examination of a majority of the jurors finally placed in the jury box. Eight out of the 12 thought petitioner was guilty. With such an opinion permeating their minds, it would be difficult to say that each could exclude this preconception of guilt from his deliberations. The influence that lurks in an opinion once formed is so persistent that it unconsciously fights detachment from the mental processes of the average man.
>
> *Irvin* at 727, 81 S.Ct. at 1645.

The Court went on to comment on the degree of pre-trial publicity permissible *before* the jury was so tainted, by pre-formed opinion, it could not be said to be capable of impartiality:

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread, and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective jur-

or's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

> *Irvin* at 722–23, 81 S.Ct. at 1642–43.

The facts in *Irvin* reveal so overwhelming a contamination of the actual jury selected that it was not possible for those jurors to lay aside their opinions and reach an impartial verdict. Such is not the instant case. Although many of the veniremen had heard of the case, none of those who sat on the panel had formed a final opinion as to guilt or innocence. All jurors actually selected asserted that they would be able to lay aside whatever vague or ill-formulated notions they may have had and reach a verdict based solely on the law and the evidence. It is apparent that the trial judge believed what the individual jurors said under oath. A federal habeas court, reviewing the actions of a trial judge, must respect his judgment absent an abuse of discretion. *Wansley v. Slayton,* 487 F.2d 90, 98, fn. 36 (4th Cir.1973), *cert. denied,* 416 U.S. 994, 94 S.Ct. 2408, 40 L.Ed.2d 773.

Perhaps the most damaging aspect of the publicity in this case was that it alerted the community to petitioner's alleged involvement in similar crimes. In *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), the Supreme Court considered specifically whether petitioner was denied a fair trial because members of the jury had learned about a prior felony conviction or certain facts about the crime with which he was charged from news accounts. In *Murphy,* petitioner was convicted in a Dade County, Florida, criminal court in 1970 of breaking and entering a home, while armed, with the intent to commit robbery, and petitioner's arrest received extensive press coverage because petitioner himself had been much in the news. Having first made himself notorious for participating in the 1964 theft of the Star of India sapphire from a New York museum, his flamboyant lifestyle made him a continuing subject of press interest. Prior to the date set for petition-

er's trial on the pending charges, he was indicted on two counts of murder in Broward County, Florida. Thereafter the Dade County court declared him mentally incompetent to stand trial; he was committed to a hospital and the prosecutor *nol prossed* the robbery indictment. In August, 1968, he was indicted by a federal grand jury for conspiring to transport stolen securities in interstate commerce. Having been adjudged competent for trial, he was convicted on one count of murder in Broward County in March of 1969 and pled guilty to one count of the federal indictment in December of that same year. The indictment for robbery was refiled in August of 1969 and came to trial a year later. These events of 1968 and 1969 drew extensive press coverage. Each new case was considered newsworthy not only in Dade County but elsewhere.

Petitioner Murphy moved to dismiss the jurors chosen from a venire of 78 on the ground that they were aware of his previous conviction of either the 1964 Star of India theft or the Broward County murder. This motion was denied as was his renewed motion for a change of venue based on allegedly prejudicial pre-trial publicity. Indeed the situation in *Murphy* bears a striking resemblance to that in the instant case. In both, we have defendants whose alleged involvement in other crimes themselves received equally widespread publicity, and who moved the trial court either for a change of venire or venue, and whose motions were denied.

In *Murphy*, the Supreme Court reviewed carefully its holdings in *Rideau, Irvin, supra, Sheppard v. Maxwell,* 384 U.S. 333, 351, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600 (1966), and *Estes v. Texas,* 381 U.S. 532, 536, 85 S.Ct. 1628, 1629, 14 L.Ed.2d 543 (1965), and summarized, "[I]n each of these cases the court overturned a state court conviction obtained in a trial atmosphere that had been utterly corrupted by press coverage," and reached the conclusion:

The proceedings in these cases were entirely lacking in the solemnity and sobriety to which a defendant is entitled in a

system that subscribes to any notion of fairness and rejects the verdict of a mob. They cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process. To resolve this case, we must turn, therefore, to any indications in the totality of circumstances that petitioner's trial is not fundamentally fair. *Murphy* 421 U.S. at 799, 95 S.Ct. at 2035.

The Supreme Court then, making specific reference to *Irvin v. Dowd,* established a model by which this constitutional standard of fairness may be determined:

The constitutional standard of fairness requires that a defendant have 'a panel of impartial "indifferent" jurors.' *Irvin v. Dowd,* 366 U.S. at 722 [81 S.Ct. at 1642].... Qualified jurors need not, however, be totally ignorant of the facts and issues involved. 'To hold the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court' *Id.,* at 723 [81 S.Ct. at 1642].... At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.' *Ibid.*
*Murphy* at 800, 95 S.Ct. at 2036.

We begin, then, with the presumption that a prospective juror is impartial. Though there has been extensive pre-trial publicity, and one may assume that an intelligent juror most likely had formed an opinion, this state of mind, standing alone, does not rebut that presumption. If the juror is able to lay aside the opinion he has formed, his impartiality remains intact. But if a

venireman, who has formed such an opinion merely asserts his impartiality in the face of circumstances, such as extensive pre-trial coverage, which might make that impartiality suspect, it is open to the defendant to demonstrate that the opinion the venireman has formed remains unaltered and will prevent him from reaching a fair verdict based solely on the law and the evidence as they are presented in open court.

In *Murphy,* as this Court will, the Court examined the actual *voir dire* of the jury. There has been in our instant case no publicized confession by the defendant as there was in *Rideau;* there have been no statements by the jurors, as there were in *Irvin,* that they would require actual evidence to overcome their belief that the defendant was guilty. It remains then simply to examine the *voir dire* of the jury actually chosen to determine whether the defendant, on whom the burden then rested, was able to demonstrate the actual existence of an opinion which eradicated that juror's presumption of impartiality. Having reviewed in detail each of petitioner's arguments concerning individual veniremen, Application at 17–25, and all of the *voir dire* testimony, the Court is of the opinion that petitioner has not met that burden. Accordingly, this claim is deemed to be without merit.

■ Petitioner's second claim is that his right to due process was violated because of the trial court's failure to sequester the jury *sua sponte.* Petitioner argues that the trial court had a duty to sequester the jury because of the "carnival atmosphere" which surrounded the trial. Respondents assert that this Court may not review this claim on the merits as it is barred by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Federal habeas corpus review of a state conviction may be barred by petitioner's failure to provide state courts with an opportunity to consider and resolve the matter. Errors at trial not objected to, in contravention of state contemporaneous objection rules, are not cognizable in federal habeas corpus proceedings. *Id.* at 87–90, 97 S.Ct. at 2506–2508. Substantive review may also be barred by failure to pursue errors on appeal. *Cole v. Stevenson,* 620 F.2d 1055, 1060–61 (4th Cir.1980), *cert. denied,* 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980). Virginia law states that, except for good cause shown or to enable the Supreme Court to do justice, any objection not contemporaneously made when error is committed may not be asserted on appeal. Rule 5:21: Rules of Supreme Court. *See Satterfield v. Zahradnick,* 572 F.2d 443, 446 (4th Cir.1978), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2270, 56 L.Ed.2d 762 (1979). However, where the State Supreme Court considers a claim which might have been procedurally barred on the merits, the federal habeas court should also consider the claim on the merits. *Baker v. Muncy,* 619 F.2d 327, 329 (4th Cir.1980); *Ulster County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979).

In this case, as in *Tweety v. Mitchell,* 682 F.2d 461, 464 (4th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 1255, 75 L.Ed.2d 483 (1983), the Virginia Supreme Court failed to state the basis for its decision. In denying Hargrave's petition for a writ of error, the Court stated only that it found "no reversible error." *Hargrave v. Commonwealth,* No. 751001 (Virginia, 11 December 1975) (unpublished). As in *Tweety,* the Commonwealth did bring to the attention of the Court the fact that petitioner had failed to comply with the contemporaneous objection rule. In its brief in opposition to the petition for a writ of error, the Commonwealth noted that "appellant raises for the first time on appeal his objection to the failure of the trial court to sequester the jury." *Id.* at 30.

■ Given that the Supreme Court was aware of the Commonwealth's argument that the claim was procedurally barred, the Court is of the opinion that the Virginia Supreme Court denied the claim because it was procedurally barred. In arriving at this opinion, the Court is counseled by the Fourth Circuit's opinion in *Tweety.* In *Tweety* the Court noted:

[We] are not prepared to presume that the Court dismissed Tweety's petition on the merits simply because the court failed to state the grounds for its decision, [footnote omitted] and we agree with the district court that the Virginia Supreme Court probably dismissed Tweety's state habeas petition for failure to make a contemporaneous objection.

*Id.* at 464.

In this case, where the State court clearly had before it argument as to the appropriate application of the contemporaneous objection rule as to this claim, this Court is likewise not prepared to presume that the court considered the claim on the merits.

■■■ As petitioner failed contemporaneously to object to this assigned error as it arose in the State court, relief under 28 U.S.C. § 2254 is barred in the absence of legitimate cause and definite prejudice. *Wainwright, supra.* Petitioner argues that the Court should find "cause" in that his trial counsel feared that a motion to sequester the jury would create hostility on the part of the individual jurors. Petitioner may establish cause by showing attorney error which evinces ignorance or oversight. *Carrier v. Hutto,* 724 F.2d 396 at 402 (4th Cir.1983). However, a deliberate, strategic choice by counsel to refrain from objecting to a trial error or preserving it on appeal does not constitute cause, unless the error is so egregious as to amount to ineffective assistance of counsel. *Id.* The question is one of counsel's motivation, and the petitioner "has the burden of showing to the district court that the failure to object or to appeal his claim was the product of his attorney's ignorance or oversight, not a deliberate tactic." *Id.* at 401. Petitioner's argument that his trial counsel refrained from moving to sequester the jury because of fear of antagonizing them evinces a deliberate tactic on the part of counsel, not ignorance or oversight. This choice on the part of counsel was within the range of competence expected of criminal trial lawyers. *Marzullo v. Maryland,* 561 F.2d 540, 542–53 (4th Cir.), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394

(1978). As petitioner has failed to show cause, the Court need not consider whether he suffered actual prejudice, *Engle v. Issac,* 456 U.S. 107, 134, n. 43, 102 S.Ct. 1558, 1575, n. 43, 71 L.Ed.2d 783 (1982), and substantive review of this issue is barred.

■■■ Petitioner's third claim is that his right to due process was violated when the Court permitted the Commonwealth to introduce evidence of petitioner's alleged involvement in other similar crimes. Questions regarding the admissibility of evidence do not present federal questions cognizable on habeas corpus review absent "circumstances impugning fundamental fairness or infringing specific constitutional protections." *Grundler v. North Carolina,* 283 F.2d 798, 802 (4th Cir.1960); *see also Chance v. Garrison,* 537 F.2d 1212 (4th Cir.1976); *Freeman v. Slayton,* 550 F.2d 909 (4th Cir.1976). To be consistent with due process, evidence of other crimes must be "rationally connected" with the charged crime. *Manning v. Rose,* 507 F.2d 889, 894 (6th Cir.1974). In this case, the evidence was admitted to show a general scheme on the part of petitioner to murder people in the hospital. Transcript at 1098. All the evidence submitted was confined to the time frame of about 24 hours before the death of the victim in this case, Josephine Thomas. Transcript at 1177–78.

■■■ Where the evidence of other crimes is the foundation of the prosecution's case, rather than a buttress to that case, the defendant may be deprived of due process. In *Foster v. Watkins,* 423 F.Supp. 53 (W.D.N.C.1976), for example, the conviction depended totally upon evidence of other crimes and secondary and questionable proof of a single latent fingerprint. The Court found that due process was violated. *Id.* at 55.

■■■ In the instant case, there was ample evidence, in addition to that of the general scheme, to show petitioner's guilt. The evidence disclosed that petitioner had the opportunity to administer a lethal dose of lidocaine to the victim when he was alone with her for at least two minutes

prior to her death. He had the means to commit the murder as he was seen in the treatment room where the lidocaine was stored and where it was found to be missing after the victim's death. Petitioner's conduct prior to the victim's death, including his contradictory explanations for why he abandoned his normal course of duty and his extreme curiosity with respect to the manner of her death, contributed to circumstances indicating his guilt. Contrary to his assertions, testimony from two former patients indicated that petitioner did administer medication even though he was not authorized to do so. In light of this evidence, and the trial judge's exercise of his discretion in restricting the testimony which was introduced, the question of the admissibility of evidence of other crimes raises no due process issue. *See Wimbush v. Commonwealth of Virginia,* 317 F.Supp. 1233, 1236 (W.D.Va.1970).

Petitioner's fourth claim is that the evidence was insufficient to sustain his conviction. Respondents argue that consideration of the merits of this claim is also barred by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) because petitioner failed to comply with Virginia's contemporaneous objection rule, Rule 5:21. However, where the highest Court of the State considers a claim on the merits which might have been procedurally barred, a federal habeas court should also consider the claim on the merits. *Baker v. Muncy, supra.* As noted above, the Virginia Supreme Court did not specify its findings in denying Mr. Hargrave's petition, but merely found "no reversible error." Unlike the situation with Claim (2), the applicability of a procedural bar was not raised by the Commonwealth on appeal. The brief of the Commonwealth in Opposition to Hargrave's Petition for Writ of Error to the Virginia Supreme Court addressed only the merits of the claim. Brief in Opposition at 31–32. Given that the Commonwealth did not raise the possibility of a procedural bar before the Virginia Supreme Court, and the Virginia Supreme Court did not specify whether it was applying Rule 5:21 in denying Hargrave's peti-

tion, this Court cannot find that the State court found as an independent and adequate State ground that the claim was barred for Hargrave's failure to comply with its contemporaneous objection rule.

Moving to the merits of the claim, in a federal habeas court proceeding, the appropriate standard of review for the question of the sufficiency of the evidence to support a State criminal conviction is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). In this inquiry, the Court must presume that the trier of fact resolved all conflicts in the evidence in the prosecution's favor and draw all reasonable inferences from basic facts proven to the ultimate facts decided. *Id.* at 326, 99 S.Ct. at 2792. An applicant is entitled to relief on the ground of insufficient evidence to convict only if it is found that "upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324, 99 S.Ct. at 2791.

The reviewing court must consider circumstantial as well as direct evidence. *United States v. Tresvant,* 677 F.2d 1018 (4th Cir.1982); *Holloway v. McElroy,* 632 F.2d 605, 641 (5th Cir.1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981). Questions regarding the credibility of witnesses are within the sole province of the jury and are not susceptible to review. *Pigford v. United States,* 518 F.2d 831 (4th Cir.1975). Having reviewed the record in this case, the Court is of the opinion that there was sufficient evidence from which a rational trier of fact could have found guilt beyond a reasonable doubt.

The evidence indicated that the victim died from an overdose of the drug lidocaine. Transcript at 708–709. Lidocaine was missing from an emergency

**312**

crash cart on the night of the victim's death. Transcript at 824. Defendant had access to both the victim and to the drug just prior to her death. Transcript at 803–805. The testimony of Joyce Andrews, R.N., regarding the death of Thomas Wray indicated that the victim's death in this case was a part of a common scheme or plan. Transcript at 1166–1190. Petitioner denied any involvement in the death of Ms. Thomas, but testified that he could not remember telling a cellmate that he had killed people for kicks. Transcript at 1432. Despite Hargrave's failure on the stand to recall ever giving patients medication, Transcript at 1480–1488, former patients Richard Byrd and Etta Jones testified on rebuttal that defendant had administered medications to them which had the effect of inducing sleep and blurring vision, respectively. Transcript at 1603–1604, 1611–1612. First degree murder in Virginia is defined as any willful, deliberate, and premeditated killing. Virginia Code § 18.-2-32. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of this offense beyond a reasonable doubt. *Jackson, supra,* 443 U.S. at 319, 99 S.Ct. at 2789. This final claim is without merit. Accordingly, the petition for a writ of habeas corpus shall be DISMISSED.

An appropriate order shall issue.

For the reasons stated above, the Court, pursuant to Rule 22(b), Fed.R.App.P., declines to issue a certificate of probable cause to appeal.