David B. FOSTER, Appellee,

v.

Robert O. BARBOUR, Appellant.

No. 79–6013.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 5, 1979.
Decided Jan. 14, 1980.

Joan H. Byers, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, and T. Michael Todd, Associate Atty. Gen., Raleigh, N. C., on brief), for appellant.

Shelley Blum, Charlotte, N. C. (Blum & Sheely, Charlotte, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and PERRY,* District Judge.

WINTER, Circuit Judge.

North Carolina appeals an order of the district court granting a writ of habeas corpus to David B. Foster who had been convicted of first degree felony murder, i. e. homicide in the course of a robbery of a store, and whose conviction had been affirmed on appeal. *State v. Foster*, 293 N.C. 674, 239 S.E.2d 449 (1977). The district

---

* Honorable Matthew J. Perry, United States District Judge for the District of South Carolina, *sitting by designation.*

court ruled that the repeated cross-examination of Foster about crimes for which he was neither tried nor convicted denied him due process of law. The court held in the alternative that the application to Foster's sentence of the decision in *State v. Niccum*, 293 N.C. 276, 238 S.E.2d 141 (1977), which judged the committed youthful offender status of G.S. 148–49.4 to be unavailable to persons sentenced to life imprisonment for murder, violated the *ex post facto* clause of the Constitution and denied him due process of law. Consequently, the district court ruled that, if Foster were tried anew and convicted, he could be sentenced as a committed youthful offender or under any newly enacted sentencing statute to the extent that it would be more favorable than the law in effect at the time of the first trial. Should the district court's grant of the writ be reversed on appeal, the district court ruled that Foster was entitled to a new sentencing hearing for clarification or modification of his sentence.

We affirm but express our contrary views with respect to sentencing should Foster be tried anew and convicted.

## I.

■ Foster testified at his trial in his own defense. Purportedly in accordance with state law which permits cross examination with respect to prior arrests and specific acts of misconduct,[1] the prosecutor posed a series of questions in which he asked Foster if he had been convicted of four charges of larceny from stores, robbery of an individual, possession of marijuana, receipt of stolen goods, resisting arrest and larceny from two other stores. When Foster denied all of the convictions except two, the prosecutor read Foster's address and birthdate from a sheaf of official looking papers that he held while interrogating

Foster about the prior convictions.[2] Although in the direct appeal the North Carolina Supreme Court found that the prosecutor was proceeding in good faith, the fact is that Foster was convicted of possession of marijuana and resisting arrest only, and all of the other charges against him had been dismissed prior to the interrogation.

■ We agree with the district court that the repeated assertions that Foster had been convicted of other crimes, particularly larceny and robbery, when those assertions were untrue, in a trial on the charge of homicide in the course of a robbery, destroyed the fairness of Foster's trial and denied him due process of law. The attack on the defendant's veracity played a critical role in the trial. The government's case rested primarily on the testimony of a co-defendant Martin, who was charged with second degree murder in exchange for his testimony, and the prosecution pitted Martin's testimony against Foster's. The instant case is indistinguishable from *Watkins v. Foster*, 570 F.2d 501 (4 Cir. 1978) and the district court correctly granted the writ on its authority. Foster's denials of the prosecutor's accusations "could not erase the blemish on his character" *Id.*, at 506, created by the persistent questioning and apparent reliance on court documents.

■ We do not think it improper for the district court to have granted the writ without holding an evidentiary hearing. The entire record of the state case was before the district court. It is of course true that the state Supreme Court had found that the prosecutor did not evince bad faith in his examination of Foster. 239 S.E.2d at 457. But the issue raised by this appeal is not the subjective good faith or bad faith of the prosecutor. It is the fairness of the trial

---

1. *State v. Mack*, 282 N.C. 334, 193 S.E.2d 71, 76 (1972). While the prosecutor may press the defendant for an admission, he is bound by the defendant's answers and may not introduce extrinsic evidence of bad acts. *State v. Cross*, 284 N.C. 174, 200 S.E.2d 27 (1973).

2. Although purportedly in accordance with a state rule of evidence permitting impeachment by interrogation concerning prior arrests and specific acts of misconduct, the prosecutor's questions all asserted convictions: "You have been convicted of larceny from several stores . . . ?" "You robbed Robert Owens?", "Received stolen goods . . . ?" "Resisted arrest . . . ?" and "Stole two more times . . . ?"

and whether Foster was denied due process of law. The record of his interrogation and the undisputed fact that except for two minor charges, Foster had not been convicted of the several crimes about which the prosecutor inquired are sufficient to bring this case within the ambit of *Watkins*. An evidentiary hearing could not have developed any further facts to alter this conclusion.

## II.

Upon his conviction for first degree felony murder, Foster was sentenced to life imprisonment, one of the mandatory alternative sentences authorized by the laws of North Carolina. N.C.G.S. § 14–17. At the time that he was sentenced, Foster was 19 years old. North Carolina had in effect a youthful offenders statute, applicable to persons under the age of twenty one, which gave a sentencing judge a discretionary sentencing possibility where in his opinion the youthful offender did not require long incarceration and could soon return to supervised freedom. N.C.G.S. §§ 148–49.10 *et seq.*[3] The statute was first enacted in 1972. By its terms, it did not specifically exclude defendants convicted of any one or more particular crimes.

When Foster was sentenced, his counsel asked that he be sentenced under the youthful offender act. It is a matter of some dispute what sentence the trial judge intended to impose. He sentenced Foster to confinement for life, but stated that "as the court understands it this life sentence will be served as a committed youthful offender . . . ." In his appeal Foster sought, among other relief, to obtain a declaratory judgment that he must be released within 4 years. The state in its brief opposed a declaratory judgment as unnecessary. Its position was that the judgment did not show that Foster had been sentenced as a youthful offender but if it had, release after 4 years would occur by operation of law and therefore a declaratory judgment was unnecessary. The state suggested that a remand to clarify any ambiguity in the judgment was all that was required.

In any event, before Foster's appeal was decided, the Supreme Court of North Carolina decided *State v. Niccum*, 293 N.C. 276, 238 S.E.2d 141 (1977). It held that the youthful offender statute was inapplicable to youthful offenders convicted of murder. Then, on Foster's direct appeal, the court held that its decision in *Niccum* rendered immaterial the intention of the sentencing judge in Foster's case, and affirmed a life sentence for Foster.

The district court was of the view that, since the North Carolina statute did not specifically exclude youthful offenders convicted of first degree murder from its terms, application of the holding in *Niccum* to Foster was a prohibited *ex post facto* judicial modification of the criminal law. As a consequence, the district court ruled that, if Foster were retried and convicted, he could not be sentenced to punishment more severe than incarceration for 4 years.

We disagree. It is true that the North Carolina statute did not specifically exclude youthful offenders convicted of first degree murder from its terms. But the possible punishments for first degree murder were certain prior to the enactment of the youthful offenders statute, and the North Carolina Supreme Court ruled in *Niccum* that the latter did not supplement the former so as to give the sentencing judge a choice of sentences. The North Carolina General Assembly has consistently mandated death or life imprisonment for first degree murder, and age constitutes a "mitigating circumstance" militating in favor of the life term, G.S. 15A–2000(f)(7), 238 S.E.2d at 146. Unlike the factual situation in *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), the ruling in *Niccum* was not preceded by a contrary holding, and unlike *Bouie v. Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894

---

**3.** The feature of the new statute most pertinent here is that the youthful offender *must* be paroled in not more than 4 years.

**62**

(1964), the ruling in *Niccum* did not make criminal that which was non-criminal before. Prior to *Niccum* there had been no judicial construction of the availability of the youthful offenders statute as a sentencing alternative in a first degree murder case; *Niccum* was the first such decision and it was announced only 5 years after the statute was first enacted, before any long-standing implied judicial construction had been established. Thus, we do not perceive that *Niccum* altered any established statutory or judicial rule of law so as to constitute judicial *ex post facto* decision making in violation of due process of law. At most, *Niccum* simply held that the new statute which arguably gave a sentencing alternative in a first degree murder case did not have that effect. As a consequence, the sentence imposed on Foster, to the extent that it was imposed under the youthful offenders statute, was void. It follows, we think, that if Foster is tried again and convicted, the sentencing court, unfettered by the possibly void sentence initially imposed, should impose a sentence in accordance with the statutes of North Carolina declared by the Supreme Court of that state to be applicable.

AFFIRMED.