**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

RICHARD DEON RUSSELL, a/k/a
Richard Deon Thorn,
<u>Defendant-Appellant.</u>

No. 99-4117

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge. (CR-98-191-A)

Argued: January 24, 2000

Decided: July 19, 2000

Before WIDENER, WILLIAMS, and KING,
Circuit Judges.

_____

Vacated and remanded by published opinion. Judge King wrote the
majority opinion, in which Judge Widener joined. Judge Williams
wrote an opinion concurring in part and dissenting in part.

_____

**COUNSEL**

**ARGUED:** Joseph John McCarthy, DELANEY, MCCARTHY,
COLTON & BOTZIN, P.C., Alexandria, Virginia, for Appellant.
Lauren Beth Poper, Special Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Vir-
ginia, for Appellee. **ON BRIEF:** Suzanne Little, Alexandria, Vir-

ginia, for Appellant. Helen F. Fahey, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees.

_____

**OPINION**

KING, Circuit Judge:

Richard Deon Russell appeals his convictions by a jury in the Eastern District of Virginia for possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and for prisoner possession of heroin, in violation of 18 U.S.C. § 13 (assimilating Va. Code Ann. § 53.1-203(5)). Because we conclude that the district court erred in denying Russell's motion for a new trial, we must vacate his convictions and remand for further proceedings.

I.

On October 10, 1997, Major Kenneth H. Washington of the Lorton Reformatory ("Lorton") in Fairfax County, Virginia, conducted a routine security check around the enclosed recreation yard of Dormitory 22. At the rear of the recreation yard, Major Washington noticed a can atop one of the poles of the yard fence. Upon removing the can, he observed a string, attached to another can, suspended inside the pole. After removing the second can, Major Washington discovered a plastic bag containing twenty-four paper packets of heroin and $310 in cash.

According to Major Washington, thirty-nine inmates resided in Dormitory 22, and only those thirty-nine had direct access to the recreation yard. Several inmates were actually in the recreation yard when the contraband was discovered, and Major Washington believed that one of them had acted suspiciously. He referred that inmate's name, along with several others, to the Federal Bureau of Investigation ("FBI") as potential suspects. Appellant Russell was a resident of Dormitory 22 in October 1997, but he was not present in the recreation yard when the contraband was discovered. He was not initially identified as a suspect by Major Washington.

2

Following their seizure, the plastic bag, the packets of heroin, and the cash were examined for fingerprints. John T. Massey, a supervisory fingerprint specialist with the FBI, conducted the fingerprint examination and analysis. Agent Massey testified that he discovered ten identifiable latent prints on seven of the twenty-four paper heroin packets. Massey also found several other fingerprints on the paper packets, but all the other prints lacked sufficient characteristics to be identifiable. After running the identifiable prints through an FBI database, Agent Massey concluded that all ten identifiable prints belonged to appellant Russell.

Russell was charged and tried for possession with intent to distribute heroin, and for prisoner possession of heroin. The trial was conducted in the district court in Alexandria on September 23, 1998, and the jury found Russell guilty on both counts. Following the verdict, Russell timely filed a Rule 33 motion for a new trial, which was denied. He now appeals his convictions and sentence.

II.

Russell first argues that the evidence at trial was insufficient to support his convictions. Additionally, Russell asserts that the district court erroneously denied his motion for a new trial, which was based on two theories: (1) newly discovered evidence; and (2) ineffective assistance of counsel.

On the sufficiency challenge, we must conclude that the evidence linking Russell to the contraband -- although, in prosecutor jargon, "very thin" -- was sufficient to support Russell's convictions.[1] With

_____

[1] In reviewing the sufficiency of the Government's evidence, the jury's verdict must be sustained "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). Therefore, our review is limited to determining whether a rational fact finder could find the essential elements of the crimes charged beyond a reasonable doubt. See United States v. Ruhe, 191 F.3d 376, 388 (4th Cir. 1999).

In this regard, although it is possible that Russell's explanation for the presence of his fingerprints is true, the Government's proof need not

3

respect to Russell's newly discovered evidence claim, the bases for this aspect of the new trial motion included: (1) his District of Columbia convictions, introduced at trial to impeach his credibility, had been vacated; and (2) the Government's fingerprint expert had been previously reprimanded for erroneously identifying fingerprints. Because neither of these claims warrants relief as newly discovered evidence within the meaning of Rule 33, we must also reject Russell's arguments in this regard. See United States v. Bales, 813 F.2d 1289, 1295 (4th Cir. 1987). However, because we conclude that Russell was not accorded effective assistance of counsel in his trial, the district court abused its discretion in denying Russell's motion for a new trial.

III.

In order to prove possession with intent to distribute, the Government was required to establish the following: (1) possession of heroin by Russell; (2) knowledge of this possession; and (3) intent to distribute heroin. United States v. Burgos, 94 F.3d 849, 873 (4th Cir. 1996) (en banc). To prove prisoner possession of heroin, the Government had to show that: (1) Russell was a prisoner who (2) possessed a chemical compound (heroin) that he did not lawfully receive. 18 U.S.C. § 13 (assimilating Va. Code Ann. § 53.1-203(5)). Because the heroin was not found in the vicinity of Russell's person, both charges were premised on the theory of constructive possession. See Burgos, 94 F.3d at 873; McGee v. Commonwealth, 357 S.E.2d 738, 740 (Va. Ct. App. 1987).

These charges focus almost exclusively on two critical facts: (1) discovery of ten of Russell's fingerprints on seven of the twenty-four packets of heroin; and (2) Russell's access to the recreation yard near Dormitory 22 where the heroin was hidden. Russell testified on his

_____

affirmatively "rule out every hypothesis except that of guilt." Holland v. United States, 348 U.S. 121, 139 (1954). As we noted in United States v. Murphy, 35 F.3d 143 (4th Cir. 1994), it is"[t]he jury, not the reviewing court, [that] weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." Id. at 148 (internal citations omitted).

4

own behalf at trial, and he did not dispute that his fingerprints were on the heroin packets confiscated by Major Washington. Instead, Russell asserted that his fingerprints had been impressed on the paper packets innocently, before someone else used the paper to package the heroin.

Russell explained that he often made picture frames and artwork to trade with other inmates from materials similar to the paper used to package the heroin. In order to make these frames and artwork, Russell testified that he would tear "a hundred sheets" of paper into small squares, and then fold and link the different pieces together to form a frame. Russell typically made these frames in a room open to other residents of Dormitory 22. When he finished, he would simply discard the unused pieces of paper in a nearby trash can.

Agent Massey conceded in his testimony that he could not determine when Russell's fingerprints had been placed on the paper pieces. Additionally, Massey acknowledged that it was possible that Russell's fingerprints would have remained on the paper pieces, even if used by someone else to wrap the heroin after Russell had handled them.[2]

If the jury had found Russell's explanation plausible and had credited his testimony, the Government's case would have undoubtedly failed. However, Russell's credibility was all but destroyed when he was mistakenly impeached on the basis of three felony convictions --

_____

[2] Massey also indicated, however, that if the paper had been touched several times by more than one finger, the prints most likely would not have been identifiable. Massey testified:

> When an object is touched by more than one finger, like, in other words, several times, you have an overlaying of ridges. In other words, it would be like a double exposure. This would make the latent print most likely of no value for identification purposes, because you have too many ridge details over top of each other.

J.A. 91. The Government relies on this testimony to rebut Russell's explanation for the fingerprint evidence, but Massey's statement also arguably supports Russell's story. Specifically, the fact that numerous fingerprints on the twenty-four packets could not be identified is also supportive of Russell's contention -- and consistent with Massey's testimony -- that someone else handled the paper after Russell.

5

two of which had been vacated before trial.**3** After weighing the evidence, including Russell's testimony and his impeachment, the jury rejected Russell's explanation and convicted him on both counts of the indictment.

IV.

A.

Pursuant to the foregoing, we must focus on Russell's assertion that the district court erred in denying his Rule 33 motion for a new trial based upon the ineffective assistance of his trial counsel. As we recognized in United States v. Smith, 62 F.3d 641, 650 (4th Cir. 1995), an ineffective assistance claim "may be brought as a motion for new trial based on `other grounds' under Fed. R. Crim. P. 33."**4**

_____

**3** The procedural history of the two vacated felony convictions is convoluted. For our purposes, it suffices that the District of Columbia Court of Appeals reversed the convictions in question and remanded the case to Superior Court. See Russell v. United States , 701 A.2d 1093 (D.C. 1997). On remand, the prosecutor dismissed the charges.

**4** Rule 33 provides, in pertinent part:

> On a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require.
>
> . . .
>
> A motion for a new trial based on any other grounds may be made only within 7 days after the verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

Fed. R. Crim. P. 33.

Here, the jury reached its verdict on September 23, 1998. On October 1, 1998, Russell filed his pleading alleging ineffective assistance of counsel. The Government conceded that this filing should be construed as a motion for a new trial on "other grounds" under Rule 33, and the district court treated it as such. Accordingly, Russell's motion asserting ineffective assistance claim was timely filed (the intermediate Saturday and Sunday are excluded under Fed. R. Crim. P. 45(a)). On January 29, 1999, the day of sentencing, the district court heard evidence on Russell's motion for a new trial and denied the same.

6

Although generally not raised in the district court nor preserved for review on appeal, ineffective assistance claims asserted in motions under Rule 33 -- and ruled on by the district court -- may be considered on direct appeal. United States v. Cronic , 466 U.S. 648, 667 n.42 (1984).**5** In that regard, we review the district court's denial of Russell's Rule 33 motion for an abuse of discretion. United States v. Adam, 70 F.3d 776, 779 (4th Cir. 1995).

B.

Russell's Rule 33 new trial claim, premised on ineffective assistance of counsel, arose in the following manner: Prior to trial, the Government filed a motion in limine seeking to admit evidence of three prior felony convictions, for impeachment purposes only, if Russell testified at trial on his own behalf. The three prior convictions included: (1) assault with intent to kill while armed, in the District of Columbia, in 1993; (2) arson, in the District of Columbia, in 1993; and (3) conspiracy to commit arson, in Maryland, in 1992. In support of the pre-trial motion, the United States Attorney provided both Russell's counsel and the trial judge with records supporting and confirming the validity of these convictions. Russell's counsel did not contest the validity of the convictions nor did he make any effort to challenge their admissibility. Twelve days before trial, on September 11, 1998, the court granted the Government's motion in limine, accepted the Government's representation on the validity of the convictions, and authorized their use for impeachment of Russell's credibility as a witness.**6** The district court, however, prohibited the Government from identifying the specific offenses underlying the three convictions.

_____

**5** A defendant who fails to file a motion for a new trial based on ineffective assistance within Rule 33's seven-day time limit may raise an ineffective assistance claim in the first instance on direct appeal only where the ineffectiveness "conclusively appears" from the record. Smith, 62 F.3d at 651. Otherwise, ineffective assistance claims should be raised in the district court in a collateral proceeding under 28 U.S.C. § 2255. Id.
**6** Fed. R. Evid. 609(a)(1), provides that, for impeachment purposes:

> [E]vidence that an accused has been convicted of such a crime [a crime punishable by death or imprisonment in excess of one year under the law under which the witness was convicted] shall

7

It is uncontradicted that Russell informed his counsel on several occasions prior to trial that his District of Columbia convictions had been "overturned." J.A. 262. Because Russell possessed no verification of this assertion, his trial counsel, rather than independently investigate the assertions of his client, chose to rely on the representations of the Government. Additionally, counsel instructed Russell that he must admit to and acknowledge three felony convictions in his trial testimony, and Russell followed his counsel's advice. Indeed, Russell's counsel himself introduced the two tainted convictions during Russell's direct examination.

Subsequent to trial, Russell's probation officer confirmed through court records that Russell's District of Columbia felony convictions -- (1) assault with intent to kill while armed, and (2) arson -- had been vacated and were invalid at the time of trial.

C.

In order to establish ineffective assistance of his trial counsel, Russell must satisfy the two-pronged test articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, Russell must show that counsel's performance was deficient. Second, Russell must demonstrate that this deficient performance prejudiced his defense. The first prong of the Strickland test is satisfied if counsel's performance "fell below an objective standard of reasonableness." Id. at 688. If "counsel's errors were so serious as to deprive the

_____

be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused . . . .

Although the pendency of an appeal does not preclude use of such a conviction for impeachment purposes, see Fed. R. Evid. 609(e), it is elementary that once a conviction has been reversed, it cannot be used to impeach the accused. See United States v. Empire Packing Co., 174 F.2d 16, 20 (7th Cir. 1949) ("Unless and until the judgment of the trial court is reversed, the defendant stands convicted and may properly be questioned regarding said conviction solely for the purpose of testing credibility.") (emphasis added).

defendant of a fair trial, a trial whose result is reliable," then the second prong is also satisfied. Id. at 687.

1.

An attorney is obligated to provide competent representation to his client. To satisfy this basic obligation, counsel must exercise the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Model Rules of Professional Conduct Rule 1.1 (1999). Thus, an attorney has a duty to adequately examine the law and facts relevant to the representation of his client: "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. As the ABA Standards for Criminal Justice provide:

> Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. . . .

ABA Standards for Criminal Justice, ch. 4, Defense Function 4-4.1 (3d ed. 1993). When representing a criminal client, the obligation to conduct an adequate investigation will often include verifying the status of the client's criminal record, and the failure to do so may support a finding of ineffective assistance of counsel. See Tolliver v. United States, 563 F.2d 1117, 1120-21 (4th Cir. 1977) (holding defense attorneys' apparent unawareness of the potential invalidation of defendant's prior convictions by a Supreme Court decision, even after defendant informed counsel of the decision, to constitute ineffective assistance).

Here, we find that defense counsel's failure to confirm the status of two of Russell's three prior convictions to be unreasonable. Prior to trial, Russell informed his lawyer that the District of Columbia convictions had been "overturned" and were therefore invalid. And counsel acknowledged that, rather than confirming Russell's assertion before advising him that he must acknowledge and testify to three

9

prior convictions, counsel simply "relied on the representations of the government that these convictions were in fact still valid at the time of trial." J.A. 255. The necessary investigation was minimal: a simple check of the District of Columbia Superior Court records would have verified that Russell's convictions had been vacated.

In the context of this case, it was critical for Russell to accurately portray his criminal record. Given the ease with which such information could have been obtained, we are constrained to conclude that his trial counsel's failure to verify the accuracy of the District of Columbia convictions fell below an objective standard of reasonableness.

2.

Having determined that Russell's counsel breached his obligation of competent representation, we must also analyze whether Russell was prejudiced by this breach. To establish prejudice under Strickland, Russell must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. To determine whether counsel's errors likely affected the outcome of Russell's trial, a careful examination of the evidence presented against Russell is necessary. And while we cannot disturb the jury's verdict on sufficiency grounds, the "thin" nature of the Government's case against Russell must weigh heavily in our consideration of the prejudicial impact of his counsel's breach.

a.

Our decisions addressing the sufficiency of fingerprint evidence -- premised primarily on temporal considerations -- illustrate the marginal nature of the Government's evidence in this case. See United States v. Corso, 439 F.2d 956, 957 (4th Cir. 1971) (per curiam) (holding that "[t]he probative value of an accused's fingerprints upon a readily movable object is highly questionable, unless it can be shown that such prints could have been impressed only during the commission of the crime"); United States v. Van Fossen, 460 F.2d 38, 40-41 (4th Cir. 1972) (reiterating the "well established" rule that "[t]o warrant conviction the trier of fact must be able to reasonably infer from

10

the circumstances that the fingerprints were impressed at the time the crime was committed"). We have construed our Corso and Van Fossen decisions to collectively stand for the proposition that "when fingerprint evidence is of questionable probative value, it cannot sustain a conviction if it is the only substantive evidence presented." United States v. Harris, 530 F.2d 576, 579 (4th Cir. 1976) (per curiam); see also Burgos, 94 F.3d at 874.

Therefore, to convict Russell in accordance with Corso and Van Fossen, the Government was required to present evidence -- more than Russell's fingerprints alone -- linking him to the contraband. In this regard, the Government offered: (1) the testimony of Major Washington, who indicated that in his twenty-one years of employment at the Department of Corrections, he had not seen paper artwork at Lorton made from the kind of paper used to package the heroin in this case; (2) evidence that only those thirty-nine inmates assigned to Dormitory 22, including Russell, had access to the recreation yard where the heroin was discovered; and (3) the fingerprint expert's conclusion that if someone handles an object previously touched by another, the fingerprints of the first person would most likely not be identifiable. Viewed through the lenient lens of Glasser, supra note 1, this evidence is barely sufficient to carry the Government's burden of proof as to Russell's guilt. Indeed, despite the introduction of the non-fingerprint evidence, the Government's identification of Russell as the culprit continued to rest exclusively on nothing more than the presence of Russell's fingerprints on the paper packets.

b.

Given the marginal nature of the Government's case, an accurate presentation of Russell's prior criminal record was critical to his credibility and to his defense. As the Supreme Court recognized in United States v. Agurs, 427 U.S. 97, 113 (1976), "[I]f the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." We recognize that the fate of a criminal defendant often depends on the jury's credibility determination. Indeed, "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence . . . ." Napue v. Illinois, 360 U.S. 264, 269 (1959).

11

In this case, Russell's defense rose or fell based on the credibility of a single witness: himself. While Russell's credibility was paramount in the jury's deliberations, it was irrevocably undermined by his improper impeachment with the two vacated convictions. The inaccurate presentation of Russell's criminal record, particularly where his credibility as a witness is in issue, cannot be said to be an insubstantial error. See United States v. Ling , 581 F.2d 1118, 1122 (4th Cir. 1978). And, as we recognized in Foster v. Barbour, 613 F.2d 59 (4th Cir. 1980), where the defendant's veracity was also critical, the "repeated assertions that [the defendant] had been convicted of other crimes . . . when those assertions were untrue . . . destroyed the fairness of [the defendant's] trial and denied him due process of law." Id. at 60 (emphasis added). Moreover, we find it significant that the jury necessarily knew that Russell possessed at least one conviction, in that proof of count two included his being a Lorton inmate at the time of that offense. It is axiomatic that the use of a single conviction for impeachment of a prisoner witness is of little evidentiary value. On the other hand, the use of three convictions for impeachment was devastating to Russell's credibility.

We also recognize that, as a practical matter, evidence of previous convictions often has a prejudicial impact beyond its proper purpose of impeachment. As the Fifth Circuit acknowledged in United States v. Holloway, 1 F.3d 307, 311 (5th Cir. 1993), admitting evidence of a defendant's prior conviction carries with it the"inherent danger that a jury may convict a defendant because he is a `bad person' instead of because the evidence of the crime with which he is charged proves him guilty." Similarly, the Court of Appeals for the District of Columbia has noted that admitting a defendant's prior convictions may "divert[ ] the attention of the jury from the question of the defendant's responsibility for the crime charged to the improper issue of his bad character." United States v. James, 555 F.2d 992, 1000 (D.C. Cir. 1977) (citation omitted).

In this case, we conclude that there is a reasonable probability that the jury's attention was diverted from the crimes charged to the issue of Russell's bad character. During its deliberations, the jury sent two questions to the court directly related to Russell's credibility as a witness. First, the jury asked, "How accessible is white paper in the population at Lorton?" J.A. 173. Second, the jury inquired, "Could the

12

defendant have called a witness from Lorton (an inmate or an employee) to testify on his behalf?" Id. These questions are strikingly indicative of the jury's concern with the veracity of Russell's explanation for the presence of his fingerprints on the contraband. Indeed, they suggest that the jury was inquiring whether evidence existed to corroborate Russell's explanation. Absent such corroborating evidence, the only remaining issue was whether the jury accepted Russell's testimony. Therefore, Russell's credibility and the jury's belief -- or disbelief -- in the truthfulness of his explanation determined the jury's verdict. Unfortunately for Russell, however, his credibility was all but destroyed by the inaccurate presentation-- by his own counsel -- of his vacated felony convictions.

c.

But for counsel's failure to verify Russell's District of Columbia convictions, a reasonable probability exists that the result of Russell's trial would have been different. Strickland, 466 U.S. at 694. We find counsel's error to be sufficiently serious as to have deprived Russell "of a fair trial, a trial whose result is reliable." Id. at 687. Accordingly, the district court abused its discretion in denying Russell a new trial based on the ineffective assistance of his counsel.

Under our system of justice, all criminal defendants-- even those clearly guilty or otherwise reprehensible -- are entitled to a fair trial and, under the Sixth Amendment, each is entitled to the effective assistance of counsel. Here, the failure of Russell's counsel to investigate whether the District of Columbia convictions had been vacated -- and the improper use of these convictions to impeach Russell's credibility -- convinces us that Russell was denied his Sixth Amendment right to counsel. This failure sufficiently undermines our confidence in the outcome of these proceedings to warrant an award of a new trial. See Strickland, 466 U.S. at 694. [7]

_____

[7] Because we find Russell's counsel ineffective for failing to verify the District of Columbia convictions, we need not address his other argument that counsel was also ineffective by failing to call corroborative witnesses.

13

V.

For the foregoing reasons, Russell's convictions are vacated, and his case is remanded to the district court for a new trial.

VACATED AND REMANDED

WILLIAMS, Circuit Judge, concurring in part and dissenting in part:

While I agree with the majority that sufficient evidence supports the jury's verdict and that the district court properly denied Russell's motion for a new trial based upon newly discovered evidence, I cannot agree with the majority's conclusion that the district court abused its discretion in denying Russell's motion for a new trial based upon ineffective assistance of counsel. Even assuming that his defense counsel's performance was deficient, Russell was not prejudiced by the introduction of the two vacated felony convictions. Any danger that the jury convicted him solely because those convictions destroyed his credibility and improperly focused its attention on his "bad character" was significantly diminished by the quality of the evidence against him and the fact that the jury never knew the nature of the vacated convictions. Most importantly, although two of Russell's prior felony convictions had been vacated, his Maryland conviction for conspiracy to commit arson had not, and, therefore, still could have been used to impeach his credibility. The fact that the jury was told that Russell had three felony convictions instead of one should not undermine this Court's confidence in the outcome of the trial. Because I also believe that Russell was not prejudiced by his counsel's failure to call witnesses who, according to him, would have testified that he made picture frames out of white paper, I would affirm the district court's decision not to grant Russell's motion for a new trial based upon ineffective assistance of counsel.

I.

As the majority correctly states, we review a district court's decision to deny a motion for new trial based upon ineffective assistance of counsel for abuse of discretion. See United States v. Adam, 70 F.3d 776, 779 (4th Cir. 1995). In order to succeed on a claim of ineffective

14

assistance of counsel, a defendant must show (1) that his counsel's actions, in light of all the surrounding circumstances, were professionally unreasonable, i.e., "outside the wide range of professionally competent assistance," Strickland v. Washington, 466 U.S. 668, 690 (1984); and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

A.

The majority holds that the district court abused its discretion in denying Russell's motion for a new trial because Russell's counsel rendered ineffective assistance that prejudiced Russell at trial. According to the majority, Russell was prejudiced because once the jury heard that Russell had three prior felony convictions, two of which had been vacated, his credibility was shattered: The jury would not believe his story that he made picture frames out of the same kind of white paper used to wrap the heroin and that the paper he discarded while making the frames was accessible to other inmates. See ante at 12. The majority also states that, because the Government's case rested solely upon Russell's credibility, there is a reasonable probability that the jury convicted him on the ground that he possessed "bad character." Ante at 12. Thus, the majority concludes that our confidence in the trial's outcome should be undermined. See ante at 13.

Even assuming that the performance of Russell's counsel was deficient, I cannot agree with the majority's conclusion in regard to the alleged prejudice suffered by Russell. The flaws in its conclusion begin with the majority's characterization of the evidence in this case. After holding that the evidence used to convict Russell was sufficient under Glasser v. United States, 315 U.S. 60 (1942), the majority then back-pedals as much as it possibly can without disturbing that holding by characterizing the Government's case against Russell as both "thin" and "marginal." Ante at 10. To be sure, the evidence against Russell was circumstantial, but a simple recitation of the evidence belies the notion that it was either "thin" or"marginal." First, ten of Russell's fingerprints were found on seven of the heroin packets. These packets were found in a recreation yard to which only thirty-nine inmates, including Russell, had access. John T. Massey, a super-

15

visory fingerprint specialist with the FBI, testified at trial that, if someone had subsequently touched the packets on which Russell's prints were found, the prints would most likely have been of no value for identification purposes. By Russell's own admission, he had access to the kind of white paper that was used to fashion the heroin packets. Finally, in regard to Russell's claim that he used white paper to fashion picture frames for fellow prisoners and prison employees, Major Kenneth Washington testified that, in his twenty-one years of working in the Department of Corrections, while he had seen picture frames made of cigarette packages, he had never seen picture frames made of white paper.

Only by downplaying the evidence against Russell that existed independently of his credibility can the majority conclude that there is a reasonable probability that the jury found him guilty solely because the two vacated convictions destroyed his credibility and improperly focused the jury's attention on his "bad character." In light of the evidence -- certainly not insignificant even when viewed outside the framework of Glasser -- arrayed against Russell, this conclusion is untenable. Even more damaging to this conclusion is the fact that, at trial, the district court did not allow the prosecution to state the nature of Russell's prior felony convictions. The prosecution could state only the number of the prior felony convictions. Thus, even though the jury heard that Russell had been convicted of three felonies, it never learned that the two vacated convictions were for the offenses of arson and assault with intent to kill. This fact significantly diminishes both the vacated convictions' impact on Russell's credibility and the "probability that the jury's attention was diverted from the crimes charged to the issue of Russell's bad character."* Ante at 12.

_____

*The majority cites to Foster v. Barbour, 613 F.2d 59 (4th Cir. 1980), for the proposition that the assertion that a defendant has been convicted of crimes for which no valid conviction exists destroys the fairness of the trial. See ante at 12. Unlike in this case, however, the prosecution in Foster did more than note the number of Foster's prior convictions. In Foster's trial on the charge of homicide in the course of a robbery of a store, the prosecution actually described the nature of several convictions on charges, such as larceny and robbery, that had been dismissed. See Foster, 613 F.2d at 60. Foster, therefore, is not apposite to this case.

16

Finally, and most importantly, although two of Russell's prior felony convictions had been vacated, his Maryland conviction for conspiracy to commit arson had not. Thus, that conviction was still admissible under Federal Rule of Evidence 609(a)(1) for the purpose of impeaching Russell's credibility. The majority dismisses this fact, stating only that it is "axiomatic" that while one prior felony conviction has little evidentiary value against a prisoner witness such as Russell, three prior felony convictions are "devastating." Ante at 12. Assuming that this proposed "axiom," for which the majority cites no authority, is truly self-evident, I have difficulty seeing how it operates with any force in a situation where the jury never knew the nature of Russell's prior felony convictions, even the one that had not been vacated. The majority points to the questions the jury sent to the district court judge as "strikingly indicative of the jury's concern with the veracity of Russell's explanation for the presence of his fingerprints on the contraband," ante at 12-13, yet it fails to explain how this concern (1) would have been lessened had the jury been told, properly, that Russell had only one prior felony conviction and (2) demonstrates that the jury's attention was focused on the issue of Russell's "bad character." Indeed, I believe that the most logical inference to be drawn from the jury's questions is that its focus was on the evidence presented linking Russell to the heroin packets, not that its "attention was diverted . . . to the issue of Russell's bad character." Ante at 12. Thus, I conclude that Russell has failed to meet his burden of showing that his counsel's failure to investigate the validity of the vacated convictions should undermine our confidence in the outcome of the trial.

B.

Because I conclude that Russell was not prejudiced by his counsel's failure to discover that two of his prior felony convictions had been vacated, I would address his argument that he is entitled to a new trial because his counsel was ineffective for failing to call witnesses to corroborate his explanation for the presence of his fingerprints on the heroin packets -- that the packets were fashioned by other inmates from paper he discarded while making picture frames. Even if counsel's performance was deficient in this regard, Russell cannot demonstrate prejudice. Russell, at the hearing in which the district court considered his motion for a new trial, stated that the wit-

17

nesses he wished to call would testify that he made picture frames. Significantly, however, none of these witnesses could have offered corroborating testimony challenging Massey's statement that Russell's fingerprints on seven of the packets would most likely have been obliterated had someone touched the packets after he did. Thus, even if Russell really did fashion frames out of white paper, a jury could still reasonably believe that he also used white paper to fashion the heroin packets. I, therefore, conclude that Russell has failed to meet his burden of showing that his counsel's failure to call corroborating witnesses should undermine our confidence in the outcome of the trial.

II.

For the foregoing reasons, I respectfully dissent from the majority's holding that the district court abused its discretion in denying Russell's motion for new trial based upon ineffective assistance of counsel.

18