**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4415

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSEPH ANDREW BELYEA, II,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (CR-03-524)

Argued: October 28, 2005          Decided: December 28, 2005

Before WILKINS, Chief Judge, and MICHAEL and TRAXLER, Circuit Judges.

Remanded with instructions by unpublished per curiam opinion.

**ARGUED:** Geremy Charles Kamens, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Erik Russell Barnett, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Jr., Federal Public Defender, Alexandria, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Joseph Belyea was convicted for possession of a firearm by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). Belyea appeals his conviction on the grounds that the district court erred in excluding expert testimony on false confessions and in denying his motion for a new trial based on newly discovered evidence. We remand for further consideration of these issues. Belyea also appeals his sentence enhancement for obstruction of justice, and we hold this issue in abeyance pending the outcome of the proceedings on remand.

I.

A.

In August 2001 Belyea attended a party hosted by Michelle Gay at her parents' home in Sterling, Virginia. This was the only time Belyea ever visited the Gay home. The partygoers, including Belyea, took methamphetamine. Just over one year later, in October 2002, Michelle Gay's father, Ralph Gay, discovered that three guns were missing from a wooden hope chest in his bedroom. When Mr. Gay reported the matter to the police, it was discovered that two of his missing (or stolen) guns, a revolver and a semi-automatic handgun, had been found during the October 2001 search of a car belonging to a suspected drug dealer in Washington, D.C.

In August 2003 Special Agent Todd Freiwald from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) interviewed Belyea about the suspected theft of Ralph Gay's guns. When Belyea's memory appeared to falter, Agent Freiwald told Belyea two lies: that one of the stolen guns had been used in a murder in D.C. and that it bore only one fingerprint, Belyea's. Upon hearing these lies, Belyea was "pretty scared" and "continued to shake." J.A. 277. Freiwald then warned Belyea that the authorities could hold him as a material witness in a D.C. jail, where "a skinny white boy like [Belyea] wouldn't last very long." J.A. 244. The agent suggested that Belyea could avoid D.C. jail by providing information on the guns.

Belyea ultimately confessed to Agent Friewald, stating that he had taken two guns, one revolver and one semi-automatic handgun, from the hope chest in the Gay bedroom, placed the guns in a laundry basket, and placed the basket in his car. He further confessed that he, Michelle Gay, and Michelle Gay's boyfriend at the time, Kevin Bruther, drove to a McDonald's in Sterling, Virginia, where Bruther traded the guns to a white male for drugs. Belyea renounced this confession at trial, however, claiming that he had made up most of it. At trial he highlighted inconsistencies between his confession and other trial evidence, including that three guns were stolen, not two, and that they were traded to

3

Bruther's African-American drug dealer in Washington, D.C., not a white drug dealer in Sterling, Virginia.

Belyea was charged with possession of a stolen firearm in violation of 18 U.S.C. § 922(j) and possession of a firearm by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). Prior to trial Belyea moved in limine to introduce expert testimony on factors that correlate with false confessions. The district court rejected this motion on the ground that the testimony would not help the jury because "jurors [already] know people lie." J.A. 57. Because the court concluded only that testimony about confessions would not assist the jury, it did not conduct a Daubert analysis on whether such testimony would be reliable. The court refused defense counsel's request to proffer the proposed testimony, explaining that the record was sufficient and that Belyea was otherwise free to argue at trial that the confession was false. At trial the court denied Belyea's renewed motion to admit the expert testimony after the government was allowed to elicit from Agent Freiwald that he had been trained not to use coercive interrogation tactics.

B.

Michelle Gay testified at trial that she was running out of drugs during the August 2001 party and, needing money to buy more, decided to cash some of her savings bonds. These bonds were

4

locked away in her father's hope chest where his handguns were kept in their original Smith & Wesson factory boxes. When Ms. Gay could not find the key to the chest, she asked Bruther and Belyea to break into the chest for her. Although the two men tried picking the lock and unscrewing the back hinges, their efforts were unsuccessful. Michelle Gay then found the key and retrieved several bonds. According to her, "[n]obody touched anything in [the chest]" except for the bonds, J.A. 163; no one handled or stole the guns, though the firearms boxes were clearly visible when she opened the chest. The government introduced Belyea's confession that he took the guns from the hope chest during the party and that Bruther traded the guns for drugs.

Throughout trial and in the jury instructions, the government and the district court equated the possession element in Count One, possession of a stolen firearm, with that in Count Two, possession of a firearm by an unlawful user of a controlled substance, on the theory that "the act of the possession and the act of a gun becoming stolen really occur[ed] at the same time." J.A. 357. The court limited the jury instructions on both counts to actual possession ("to have direct physical control over something," even if just for a moment), explaining that "if the jury accepts the confession as accurate, it is a confession to actual possession and to nothing else." J.A. 293. The court gave

5

no instruction on constructive or joint possession despite the government's request.

The jury found Belyea not guilty on Count One (possession of a stolen firearm) but guilty on Count Two (possession of a firearm by an illegal drug user). Belyea moved for a new trial on the basis of newly discovered evidence and the court's exclusion of expert testimony on confessions.

Belyea presented the newly discovered evidence at a post-trial hearing. Four of Bruther's acquaintances and one investigator from the Federal Public Defender's Office testified that Bruther had repeatedly and consistently said that he alone had stolen the guns from the hope chest in the Gay bedroom and that Belyea had had "zero involvement" in the theft. J.A. 380, 452. Bruther told one of these witnesses that he had lied to the ATF when he pinned the gun theft on Belyea because he (Bruther) was terrified of being sent back to prison, having just been released on an unrelated charge. Bruther began making these inculpatory comments about Belyea in the fall of 2002, months before either he or Belyea was interviewed about the gun theft, and Bruther continued making these comments until February 2003, when he committed suicide (a month before the post-trial hearing). His comments were "always the same," J.A. 451, with one minor inconsistency: he inflated the quantity of drugs for which he had

6

traded the guns after being teased by his friends for making a bad deal.

According to the newly discovered evidence, the gun theft did not occur during the August 2001 party when Belyea was in the Gay house. Rather, the theft occurred on an entirely separate and later occasion, perhaps days after the party: Bruther and Michelle Gay were preparing to drive away from the Gay home when Bruther (alone) ran back inside, broke into the chest, and stole the guns without anyone else's knowledge or participation. Bruther said he chose Belyea as his fall guy because he knew that Belyea had a "bad past," J.A. 463, had been in the Gay bedroom where the hope chest was located, and had suggested to Bruther during their unsuccessful effort at the party to break into the chest that they remove the hinges rather than pick the lock.

The district court denied Belyea's motion for a new trial on grounds that the new evidence was neither material nor likely to result in an acquittal at a new trial. The court concluded that the "new evidence does not undermine the jury's verdict that Belyea possessed the firearms before they were stolen" -- that he "exercised dominion and control over the firearms, at least before they were removed from the Gay bedroom." J.A. 517-18. The court thereby invoked the standard for constructive possession, not actual possession, even though the jury was never instructed on

7

constructive possession.  The court also declined to reconsider its exclusion of expert testimony on the subject of confessions.

At sentencing Belyea objected to the two-level enhancement for obstruction of justice recommended in his presentence report.  The court nonetheless imposed the enhancement upon finding that Belyea was "not truthful when he testified." J.A. 523.

Belyea now appeals.

## II.

Belyea first argues that the district court erred by excluding expert testimony on factors that correlate with false confessions.  We review for abuse of discretion the district court's decision to exclude this testimony.  See, e.g., United States v. Crisp, 324 F.3d 261, 265 (4th Cir. 2003).  Expert testimony is admissible under Rule 702 of the Federal Rules of Evidence if it involves scientific, technical, or specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue.  The testimony must be both reliable and relevant.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-92 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49, 152 (1999).  While a trial court has broad discretion in deciding whether to admit expert testimony, it abuses this discretion if it makes an arbitrary decision or otherwise

8

makes an error of law.  See United States v. Barile, 286 F.3d 749, 753 (4th Cir. 2002).

Daubert requires a nuanced, case-by-case analysis of whether the proposed expert testimony will assist the trier of fact.  See Daubert, 509 U.S. at 591-92; United States v. Harris, 995 F.2d 532, 534-35 (4th Cir. 1993) (noting pre-Daubert trend of eschewing per se rules of inadmissibility and instead making particularized determinations).  But see United States v. Prince-Oyibo, 320 F.3d 494, 500-01 (4th Cir. 2003) (noting that Daubert requires "nuanced evaluation" of evidence, but upholding per se ban in limited context of polygraph evidence).  Rather than making broad generalizations about evidentiary value, a court must determine whether expert testimony will help the jury, given the facts in issue in the particular case.

The district court failed to make such a particularized determination here.  The court's essential reason for excluding the expert testimony on false confessions was that "jurors know people lie."  J.A. 57.  This statement may be true as a general proposition, but it does not necessarily apply in this case; it does not mean that jurors know that people confess falsely or that someone in Belyea's position may be more likely to do so.  Jurors may know that people lie in everyday life or even sometimes under oath, particularly when they believe lying to be advantageous.  Jurors may not know, however, that people lie on occasion to their

own detriment by falsely confessing to crimes that they did not commit.  The phenomenon of false confessions is counter-intuitive and is not necessarily explained by the general proposition that "jurors know people lie."  See Advisory Committee Notes, Fed. R. Evid. 804(b)(3) (suggesting that statements against interest as rare); United States v. Smithers, 212 F.3d 306, 315-16 (6th Cir. 2000) (stating that district court was "simply wrong" for assuming that jurors know to be skeptical of eyewitness testimony when many factors affecting memory are counter-intuitive, complex, and not fully known by jurors).

The court's explanation here -- that whether a confession is false is "something juries decide all the time, and I don't need an expert to help them in that respect" -- suggests that expert testimony on false confessions is never admissible. J.A. 56.  This approach is erroneous as a matter of law because it overlooks Daubert's general requirement for a particularized determination in each case.  The court should have inquired into whether jurors commonly know about false confessions as a particular form of lying and about specific factors that may correlate to false confessions. See United States v. Lester, 254 F. Supp. 2d 602, 608 (E.D. Va. 2003) (noting that Rule 702 and Daubert render inadmissible only testimony on matters obviously within common knowledge of jurors). The specifics of this case mandate a particularized inquiry:  a federal agent twice lied to Belyea during his interrogation; Belyea

10

was a drug addict, in prison at the time on an unrelated charge, and admittedly terrified during the interrogation; and Belyea has suffered from clinical depression and behavioral problems throughout his life.

It appears to us that the expert in this case, Dr. Solomon Fulero, would have addressed whether and how these particular factors correlate to false confessions. Belyea's motion in limine states that "Dr. Fulero would testify that false confessions in fact occur, and that various techniques used by law enforcement agents, such as false accusations and false promises can influence a person's decision to confess falsely." J.A. 16. In addition, Dr. Fulero would apparently testify that "particular characteristics of the person interrogated, such as . . . anxiety problems, can affect the likelihood that a confession is false." J.A. 16. The record on appeal is sparse, however, on Dr. Fulero's proposed testimony because the district court refused defense counsel's request to make a proffer of the testimony. Without more detailed information, it is impossible to determine whether the expert testimony would aid the jury in this case. But the limited record suggests that the testimony would be helpful by at least clarifying that some people, contrary to common sense, make false inculpatory statements. See United States v. Hall, 93 F.3d 1337, 1343-45 (7th Cir. 1996) (finding abuse of discretion where court excluded possibly critical expert testimony on personality disorder

11

that made false confessions more likely).  Accord United States v. Shay, 57 F.3d 126, 133-34 (1st Cir. 1995) (mental disorder).

The foregoing conclusions require us to remand the case to the district court for a more complete analysis of whether the expert testimony is admissible under Daubert and Rule 702; specifically, whether it would aid the jury in this case and, if so, whether it satisfies the Daubert factors for assessing the reliability of expert scientific or professional testimony. Daubert, 509 U.S. at 591-95; United States v. Dorsey, 45 F.3d 809, 813 (4th Cir. 1995).  In conducting this analysis, the district court should take into account any other applicable evidentiary rules, including Rule 403.  Daubert, 509 U.S. at 595.

If the district court determines on remand that Dr. Fulero's testimony should have been admitted, its erroneous exclusion at trial cannot be deemed harmless.  The government has not raised the harmlessness issue in this appeal.  However, nine other circuits have concluded or at least suggested that appellate courts may raise the issue of harmlessness sua sponte, depending on the length and complexity of the record, the certainty of harmlessness, and the prospect that reversal will result in protracted or futile proceedings.  See, e.g., United States v. Gonzales-Flores, 418 F.3d 1093, 1100-01 (9th Cir. 2005) (citing cases).  Assuming without deciding that our circuit allows the harmlessness inquiry to be considered sua sponte and that the

12

inquiry is appropriate in this case, we conclude (as we said above) that if Dr. Fulero's testimony is admissible, its exclusion was not harmless.

Belyea's confession was crucial to his conviction. See J.A. 516 (district court describing confession as "key evidence" against Belyea). Indeed, it is the only direct evidence that Belyea actually possessed the guns -- the theory of possession on which he was tried and convicted. The remaining evidence, including that Belyea helped in the attempt to pick the lock of the chest and knew the style of the stolen guns, is far from definitive on the issue of actual possession.

Moreover, Belyea was not allowed to introduce potentially forceful evidence supporting his contention that his confession was false. The excluded expert testimony would have explored, among other factors, characteristics (such as anxiety problems) and interrogation techniques (such as false accusations) that make suspects more likely to confess falsely. Belyea was of course still able to challenge the confession at trial, for example by testifying that he made up most of it and by highlighting discrepancies between his confession and the remaining evidence of the crime. He was also given leeway to suggest that he was vulnerable at the time of his interrogation: he was in prison at the time, a drug addict, and lied to by the ATF agent. But he could not challenge the confession on a separate and potentially

13

compelling ground.  He could not explain that false confessions, while counter-intuitive, do in fact occur and are more likely to occur in certain circumstances, perhaps in the very circumstances of his case.  This evidence would likely have altered the complexion of the case.  See Smithers, 212 F.3d at 317.

Given the critical weight of Belyea's confession, we cannot say that any error in excluding Dr. Fulero's testimony on false confessions was harmless.  See Shay, 57 F.3d at 134.  We simply lack the requisite assurance that any error did not "substantially sway[]" the jury's judgment.  United States v. Weaver, 282 F.3d 302, 314 (4th Cir. 2002) (internal quotation marks and citations omitted).

If the district court concludes on remand that Dr. Fulero's testimony should have been admitted, the error of excluding his testimony would not be harmless, and the court should enter an order granting a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

Belyea next argues that the district court erred in denying his motion for a new trial that was based on newly discovered statements by Bruther, who said that Belyea did not participate in or even witness the theft of Ralph Gay's handguns. A motion for a new trial based on newly discovered evidence should be granted only if: (1) the new evidence is in fact newly discovered; (2) facts are presented from which the court may infer due diligence on the part of the movant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) the evidence is "of such a nature that it would probably result in an acquittal at a new trial." United States v. Lofton, 233 F.3d 313, 318 (4th Cir. 2000) (internal quotation marks and citation omitted); Fed. R. Crim. P. 33. We review the district court's denial of a Rule 33 motion for abuse of discretion. United States v. Russell, 221 F.3d 615, 619 (4th Cir. 2000).

The district court denied Belyea's motion on grounds that the new evidence was neither material to the issue of possession, nor would it probably result in an acquittal at a new trial. Specifically, the court reasoned that the new evidence does not undermine the trial evidence supporting Belyea's conviction on Count Two (possession of a firearm by a drug user), and for this reason the new evidence is immaterial to his conviction and would

15

not probably result in an acquittal at a new trial. The court hinged these conclusions on a theory of constructive possession: that there was "more than sufficient evidence" at trial to support a finding that Belyea "exercised dominion and control over the firearms, at least before they were removed from the Gay bedroom." J.A. 516-17. Cf. United States v. Gallimore, 247 F.3d 134, 137 (4th Cir. 2001) (defining constructive possession). This evidence, the court said, is undisturbed by Bruther's newly discovered statements. The problem with this reasoning is that the court did not give a broad instruction on possession, one that covered both actual and constructive possession and both individual and joint possession.

Rather, the court limited the jury instruction on both counts to actual possession, "to have direct physical control over something," on the theory that this is purely "an actual possession case"; the court's only elaboration on this instruction was that "momentary possession is sufficient." J.A. 292-94, 339, 342. Given this limited jury instruction, we must consider whether the newly discovered evidence undermines Belyea's conviction for actual possession of a firearm, not constructive possession. See United States v. Brodwin, 292 F. Supp. 2d 484, 494 (S.D.N.Y. 2003) (in evaluating a motion for a new trial, "the [c]ourt must consider how [the] evidence was presented in [the actual] trial, and not how it might be presented in some other trial").

16

When examined through the actual possession lens, the split verdicts -- acquittal on Count One, conviction on Count Two -- suggest that the jury believed that Belyea actually possessed the guns in the Gay bedroom, even if just for a moment, before they were removed from the home. These jury verdicts belie the court's and prosecution's theory throughout trial that the evidence of possession for both counts is "obviously the same" and "the act of possession and the act of the gun becoming stolen really occur at the same time." J.A. 310, 357. The district court, while conceding that the verdicts appear inconsistent in light of the trial theory, nonetheless characterized them as reasonable, and we do not question this characterization. See United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994) ("[I]f the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.")

We nevertheless conclude that the newly discovered evidence undermines Belyea's conviction for actual possession. It suggests that Bruther stole the guns on an entirely separate and later occasion than the occasion described at trial, when Belyea and Bruther were trying to pick the lock of the hope chest during the party in an effort to access the bonds within. Rather, Bruther may have stolen the guns days or even weeks after the party in an altogether different scene: he and Michelle Gay were preparing to

17

drive away from the Gay home when he ran back inside, alone. According to Bruther's repeated and generally consistent admissions, Belyea had "zero involvement" in this theft, "had nothing to do with it." J.A. 452, 462-63. Bruther only implicated Belyea to law enforcement on one occasion because he knew that Belyea had a "bad past" and had been in the Gay bedroom once (during the incident described at trial), when the two men joined in an unsuccessful effort to break into the chest and retrieve the bonds. J.A. 463.

By Bruther's account, Belyea was not even in the Gay bedroom at the time of the theft; he did not know about or participate in the theft. Because the new evidence questions whether Belyea ever actually (or even constructively) possessed the guns, it qualifies as being material to the central issue of possession.

Moreover, the new evidence would probably result in an acquittal at a new trial because it so marginalizes and overshadows the inculpatory evidence that it would likely raise reasonable doubt in jurors' minds that Belyea ever possessed the guns. For example, at a new trial Belyea's admission that he helped Bruther try to break into the hope chest would be measured against Bruther's repeated admissions that he (Bruther) stole the guns on a different occasion without any assistance from Belyea. The most damning evidence against Belyea, his knowledge of the type of guns

18

in the chest, would have less significance in light of the new evidence. (In any event, Belyea's general description of the guns is not so damning when examined in the context of the possession issue, since it may mean that Belyea saw the guns or gun boxes at some point but never actually handled the guns; Michelle Gay testified that she, Bruther, and Belyea all saw the Smith & Wesson boxes when she retrieved her bonds at the party.) Finally, the new evidence casts serious doubt on the prosecution's theory that Belyea and his friends "stole those guns so that they could get more drugs." J.A. 99.

Because the newly discovered evidence is material and would probably result in an acquittal at a new trial, we conclude -- assuming the evidence meets the standard for trustworthiness (see below) -- that the district court abused its discretion in denying Belyea's motion for a new trial based on the newly discovered statements by Bruther.

The government argues on appeal that we should affirm the district court's denial in any case because the new evidence, exculpatory statements against interest made by an unavailable declarant, is not admissible under Rule 804(b)(3) of the Federal Rules of Evidence. We are unable to address this argument on the present record because the district court did not reach the issue of whether "the corroborating circumstances clearly indicate the trustworthiness" of Bruther's statements. Fed. R. Evid. 804(b)(3);

19

<u>see</u> J.A. 490 (finding witnesses who recounted Belyea's statements "completely credible" and expressing "no doubt" that Bruther made statements, but declining to rule on whether statements themselves were true). The district court must address this issue in the first instance on remand.

If the district court concludes on remand that the newly discovered evidence is admissible under Rule 804(b)(3), it should enter an order granting a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

## IV.

We remand the case to the district court for proceedings consistent with this opinion. We retain jurisdiction over the appeal so that we may review the district court's orders on remand with regard to the admissibility of Dr. Fulero's expert testimony and Bruther's newly discovered statements. In the meantime, we hold in abeyance the issue relating to Belyea's challenge to his sentence.

<u>REMANDED WITH INSTRUCTIONS</u>