**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-7475

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL N. LEWIS,

Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. John Preston Bailey, Chief District Judge. (1:05-cr-00108-JPB-DJJ-1; 1:09-cv-00032-JPB-DJJ)

Argued: March 20, 2012                    Decided: April 20, 2012

Before NIEMEYER, GREGORY, and WYNN, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Wynn joined.

**ARGUED:** David L. Neal, Hillsborough, North Carolina, for Appellant. Robert Hugh McWilliams, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee. **ON BRIEF:** William J. Ihlenfeld, II, United States Attorney, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

In this case, appellant Michael Lewis filed a habeas petition pursuant to 28 U.S.C. § 2255 (2008) to vacate his conviction on grounds that he did not have the effective assistance of counsel. Finding that the Appellant's Sixth Amendment rights were violated, we vacate his guilty plea and remand to the district court.

I.

Michael Lewis was charged in a federal criminal complaint with conspiracy to distribute over five grams of cocaine base in October of 2005. In December of that year, a grand jury indicted him on four drug-related counts. During plea negotiations, Lewis's public defender, Brian Kornbrath, informed the court that due to Lewis's two previous drug convictions, he would face a mandatory life sentence without the possibility of parole if convicted at trial pursuant to 21 U.S.C. § 841. The negotiations were also informed by Kornbrath's assessment that Lewis was a career offender under the Federal Sentencing Guidelines. Lewis agreed to plead guilty and signed a plea agreement. But on the day of the scheduled hearing, Lewis changed his mind and decided not to plead guilty. Kornbrath soon filed a motion to withdraw, and attorneys James Zimarowski and Ann Ballard were appointed to represent Lewis.

2

Zimarowski and Ballard continued negotiating with the Government and, like Kornbrath, they concluded that Lewis would face a mandatory life sentence if convicted on any count at trial. Zimarowski further advised Lewis that because of the two previous drug convictions, he would be considered a career offender under the Sentencing Guidelines. In February of 2006, Lewis again returned to court to plead guilty. The district court explained that pursuant to § 841, he might receive a life sentence. Following the factual proffer by the Government, Lewis again changed his mind and indicated that he would not go forward with the plea.

Zimarowski then wrote his client a letter, informing him that he was foolish not to accept the plea and that further plea offers were not likely to come from the Government or be accepted by the district court. For the third time, Lewis agreed to plead guilty. The district court held a Rule 11 colloquy and entered the guilty plea on February 21, 2006 -- the day the trial was set to begin.

Later, before the sentencing hearing, Lewis filed a pro se motion to withdraw his plea. He discovered after pleading guilty that he was not a "career offender" under the Sentencing Guidelines, nor was he subject to a mandatory life sentence pursuant to § 841. The presentence report made clear that two of Lewis's three previous convictions could not count as prior

3

felonies under U.S.S.G. § 4B1.1 or 21 U.S.C. § 841 because the maximum possible punishment for those offenses did not exceed one year of imprisonment. When the parties returned for the sentencing hearing, the court first considered the motion to withdraw. Zimarowski told the court that he had advised against Lewis's filing the motion. The court then directed Lewis to argue the motion himself. It later denied the motion and sentenced Lewis to 405 months' imprisonment to be followed by 5 years of supervised release.

Lewis appealed to the Fourth Circuit, arguing that the district court erred by not permitting him to withdraw his guilty plea and by improperly participating in plea negotiations. In an unpublished per curiam opinion, this Court affirmed the conviction and sentence. In February of 2009, Lewis filed a § 2255 motion in the district court. The district court denied Lewis's request for a certificate of appealability ("COA"). Following Lewis's pro se request for a COA from the Fourth Circuit, this Court issued one in June of 2011.[1]

## II.

Lewis argues that his Sixth Amendment right to the effective assistance of counsel was violated by his attorney's

---

[1] We further grant Lewis's motion, filed November 30, 2011, to extend the scope of the COA.

4

erroneous advice and by the district court's decision to order him to argue his own motion to withdraw his guilty plea. We consider both claims of error in turn.

A.

Lewis contends that he did not have the effective assistance of counsel when he entered his guilty plea because his attorneys misadvised him that he qualified for a career offender sentencing enhancement and a mandatory life sentence. This Court reviews the legal questions involved in an appeal of the denial of a § 2255 motion de novo. United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). The question of whether "trial counsel provided ineffective assistance is a mixed question of fact and law which this Court reviews de novo." Id.

To make out a claim for ineffective assistance of counsel, an appellant must satisfy the two-pronged test laid out in Strickland v. Washington: he must show that counsel's conduct "fell below an objective standard of reasonableness" and that he was prejudiced as a result. 466 U.S. 668, 688, 694 (1984). In the plea context, the prejudice prong requires the petitioner to show that there exists "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Lafler v. Cooper, 566 U.S. ___ (2012) (slip op., at 5) (quoting Hill v. Lockhart,

474 U.S. 52, 59 (1985)); see also Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988).

The crux of Lewis's ineffective assistance claim revolves around a particular facet of Ohio law. Lewis was convicted of two drug felonies in Ohio, one of which was classified as an "F-5," which carries a maximum sentence of one year. He was also convicted of an escape offense, another F-5 felony that also carries a one-year maximum sentence. Under the Federal Sentencing Guidelines, a defendant qualifies as a career offender only if he has been convicted of two prior offenses punishable by more than one year. U.S.S.G. § 4B1.1; id. § 4B1.2 appl. n.1 ("'Prior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year . . . .") (emphasis added). Similarly, a defendant is subject to a mandatory minimum life sentence under 21 U.S.C. § 841(b)(1)(A)(iii) only if he has "two or more prior convictions for a felony drug offense . . . ." Id. A "felony drug offense" is an offense that is "punishable by imprisonment for more than one year." 21 U.S.C. § 802(44) (2002) (emphasis added). Thus, while Lewis was convicted of three previous felonies, they would not have triggered either the career offender enhancement or the mandatory life sentence because two of those three felonies were not punishable by more than one

6

year in prison.  As a result, Lewis's attorneys misinformed him when they said he was facing both a career offender enhancement and a mandatory life sentence.

Lewis's attorneys' advice was plainly deficient under Strickland.  The Supreme Court has recognized that in representing criminal defendants, an attorney's "reasonable professional judgment" is given a "heavy measure of deference." Strickland, 466 U.S. at 690-91.  There is, however, "a difference between a bad prediction within an accurate description of the law and gross misinformation about the law itself."  Ostrander v. Green, 46 F.3d 347, 355 (4th Cir. 1995), overruled on other grounds by O'Dell v. Netherland, 95 F.3d 1214 (4th Cir. 1996) (en banc).  While "[w]e cannot expect criminal defense lawyers to be seers, [] we must demand that they at least apprise themselves of the applicable law and provide their clients with a reasonably accurate description of it."  Id. Here, Lewis's attorneys gave legal advice predicated on a plainly false interpretation of federal law.  Had they simply read the applicable federal statutes and correctly applied them to the facts of this case, they would have discovered their error.  Cf. Rompilla v. Beard, 545 U.S. 374, 383 (2005) ("There is no need to say more, however, for a further point is clear and dispositive: the lawyers were deficient in failing to examine the court file on Rompilla's prior conviction.").

The Government argues that the advice was not deficient because "[a]ny federal prosecutor or experienced defense attorney knows that determining a defendant's prior criminal record with certainty" is a difficult task. Gov's Br. 11. But this is a non sequitur. Lewis's attorneys accurately determined Lewis's prior criminal record, noting that he had been convicted of three offenses in Ohio. Their error was in failing to recognize that the two F-5 offenses were not felonies under federal law for purposes of the career offender enhancement or § 841. Thus the Government conflates the question of whether Lewis's criminal record was accurately ascertained with the question of whether Lewis's attorneys correctly applied black-letter law.

Turning to the second Strickland prong, we find that Lewis was prejudiced by counsel's erroneous advice that § 841 applied to him.[2] First, we note the obvious: the bad advice given to Lewis effectively negated his reason to plead guilty. Lewis was told that if he went to trial and was convicted, he would receive a mandatory life sentence; he chose instead to plead guilty to all four counts without the benefit of a plea agreement, J.A. 299, which subjected him to a maximum life

---

[2] Because we find that the deficient advice with respect to § 841 independently prejudiced Lewis, we do not address whether there was prejudice with respect to the career offender enhancement.

sentence (though the district court later sentenced him to 405 months imprisonment and 5 years of supervised release), J.A. 278. In reality, however, Lewis was subject to a maximum life term (but not a mandatory life term) whether he pled guilty or was convicted after a trial. In other words, Lewis had something to gain by going to trial -- the possibility of an acquittal on some or all of the counts -- but nothing to lose.[3] "This [advice] may well have induced a guilty plea that would not have been forthcoming if [Lewis] had been correctly told" that he faced the same maximum sentence whether he went to trial or pled guilty. Hammond v. United States, 528 F.2d 15, 18 (4th Cir. 1975).

Second, Lewis repeatedly backed out of his decision to plead guilty. On two separate occasions Lewis agreed to plead guilty only to change his mind during the Rule 11 colloquy. It wasn't until the third such hearing that the district court was able to conduct the colloquy and enter the plea. This fact demonstrates that Lewis was exceedingly reluctant to waive his right to trial even when he was operating under the erroneous belief that he was subject to a mandatory life sentence if

---

[3] The possibility of Lewis's receiving a reduction for acceptance of responsibility was foreclosed once he made his unsuccessful motion to withdraw his guilty plea. See U.S.S.G. § 3E1.1(a) cmt. n.3. Indeed, the district court declined to make a downward adjustment for acceptance of responsibility for precisely this reason.

convicted.  In one aborted guilty plea, Lewis told the court, "I was going to take this plea, you know, because I'm scared for my life . . . it's the rest of my life in prison."

Third, Lewis's counsel pressured him to take the deal precisely because he faced a mandatory life sentence if he went to trial.  Kornbrath told the court on the record, "He was indicted and convicted of an over fifty gram conspiracy, with a threatened 851 [*sic*] information, he's looking at mandatory life without a possibility of parole.  That's been laid out in writing and repeated in meetings with him.  The stakes are very high here."  Zimaroski sent Lewis a letter pushing the same line:

> First, <u>you are in no position to reject a plea offer</u> by the Government.  Should you take this matter to trial, pursuant to <u>U.S. Code 21 USC 841(b)(A)</u> [*sic*], upon conviction with two (2) prior drug felonies, you would be sentenced to mandatory life without the possibility of parole . . .  It does not matter what should have, could have, or would have been done with a prior conviction; all that matters is that two (2) prior drug conviction felonies have become final in the records.  With that you become exposed to a <u>mandatory</u> life sentence.

J.A. 341 (emphasis added).  Even the district court indicated that "[i]f the Grand Jury indicts you, it will be for a charge for which you face a mandatory life sentence if convicted." J.A. 491.[4]

---

[4]  We also reject the Government's contention that the district court's statements at the plea colloquy cured the
(Continued)

Finally, Given these facts, it is indisputable that the second Strickland prong is satisfied. We therefore hold that the Appellant's Sixth Amendment right to the effective assistance of counsel was violated, and vacate his guilty plea.

B.

Lewis further argues that he did not receive the effective assistance of counsel during the district court's hearing on his motion to withdraw the guilty plea. Because we vacate the plea on other grounds, we decline to address the issue.

III.

For the reasons given above, we vacate the Appellant's guilty plea and remand to the district court for further proceedings.

VACATED AND REMANDED

---

defective advice. It is true that the district court's statements are relevant in determining whether prejudice occurred. E.g., United States v. Dyess, 478 F.3d 224, 237-38 (4th Cir. 2007). Here, however, nothing the district court said corrected the error: the court informed Lewis that the maximum sentence it could impose as a result of his guilty plea was life in prison; but the court never indicated that Lewis would not face a mandatory life sentence if convicted at trial. To the contrary, it suggested precisely the opposite -- that if he chose to go to trial, Lewis faced a mandatory life sentence. J.A. 491.

11