GREGORY, Circuit Judge,
dissenting:
The majority goes to great lengths to disguise the simple truths of this case: Counsel gave bad advice to a client, and the client relied on the advice in deciding to plead guilty and forgo his constitutional right to a trial. I respectfully dissent.
I.
On the morning of September 2, 2003, Gregory Christian considered whether to plead guilty in state court to two counts of first degree robbery and one count of malicious assault on a police officer. In negotiations with the government, Christian had been mindful of the impact his two prior felony convictions could have on any sentence imposed under the state’s recidivism laws. Indeed, Christian had gone so far as to condition his tentative plea agreement on the demand that “NO RECIDIVIST [BE] FILED!” J.A. 597.
As became clear on the morning of the plea hearing, Christian’s attorney, Gerald Henderson, assumed that the prior felonies could trigger a mandatory minimum life sentence if Christian was convicted of any of the new charges. That assumption was plainly false. Because Christian’s two felonies were entered on the same day, they only counted as one strike under the West Virginia’s recidivism scheme. Henderson, however, had failed to investí- *455 gate his client’s criminal record after being told of the existence of the two felonies.
At the hearing, Christian told Henderson that he wanted to plead guilty to only the malicious assault charge, and proceed to trial on the robbery charges. Henderson warned Christian that “if you enter a plea to a felony with no agreement that the state won’t recidivist, then they have every right to file their recidivist petition.” J.A. 516-17. As Henderson further recalled:
I would have told you that pleading to the one count, if you have two usable felonies, which you told me, then of course that’s not in your best interest for them to give you life without eligibility if they can prove those priors.... I explained to you, would have explained to you that you understand that if you enter a plea to this charge and you have two felonies, as you told me you did, that they could file a petition, and if they prove those felonies that are usable felonies under law, that you could get life without eligibility for 15 years. I would have advised you of that.
J.A. 518-19.
Despite the thin veneer of ‘hypotheti-cals’, Henderson’s testimony clearly establishes that (1) Christian told him of the two prior felony convictions; (2) Henderson did no further investigation to determine the date or nature of the prior felonies; (3) on the basis of Christian’s disclosure, Henderson advised him that he faced a possible mandatory minimum life sentence if convicted of any of the new charges; and (4) the advice Henderson gave was incorrect because under no circumstances did Christian face such a sentence if convicted.
II.
Against that factual backdrop, the question we face is simply whether the state court’s rejection of Christian’s habeas petition involved an unreasonable application of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny. Specifically, would it have been unreasonable for the state court to believe that defense counsel’s performance was adequate and, if so, would it have also been unreasonable to believe that Christian suffered no prejudice as a result of the deficient performance?
A.
Regarding the objective reasonableness of counsel’s performance, the pivotal question is this: did Henderson breach an established duty to investigate and provide sound advice about whether Christian’s prior felonies counted as separate for recidivism purposes in West Virginia? The answer is clearly yes. As Strickland established, “counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” 466 U.S. at 691, 104 S.Ct. 2052. Building on that precedent, both the Supreme Court and this Court have consistently held that an attorney has a duty to investigate a client’s criminal record, in addition to other aspects of a client’s background, when the record has a bearing on the current proceedings. In Rompilla v. Beard, for instance, the Supreme Court held that “lawyers were deficient in failing to examine the court file on [a defendant’s] prior conviction” when the lawyers knew the government intended to rely on the prior conviction during sentencing. 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). Similarly, in United States v. Russell, 221 F.3d 615, 621 (4th Cir.2000), this Court concluded that defense counsel was ineffective for failing to adequately scrutinize and contest evidence of a defendant’s three prior felony convictions that the government sought to introduce for impeachment. As we observed: “When representing a criminal client, the obligation to conduct an adequate investiga *456 tion will often include verifying the status of .the client’s criminal record, and the failure to do so may support a finding of ineffective assistance of counsel.” Id. at 621.*
Here, Henderson failed to investigate his client’s criminal record — either by asking more questions or pulling a file — when accurate information was critical to the client’s ability to make an informed, intelligent choice about whether to accept a plea deal. Indeed, Christian made clear during plea negotiations that his desire to avoid a recidivism enhancement was a significant motivating factor for accepting a deal — as revealed by the letter Henderson wrote to the government expressing Christian’s demand that “THERE WILL BE NO RECIDIVIST FILED”. J.A. 597. Doing a minimally sufficient investigation into Christian’s record would have involved very little effort, requiring a simple examination of the dates of the two prior felony convictions. And the reward would have been significant, fundamentally changing Christian’s calculus in deciding whether to forgo his Sixth Amendment right to a trial.'
Of course, “when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel’s failure to pursue those investigations may not later be challenged as unreasonable.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052. But there is no showing in this record that Christian told Henderson that the convictions at issue were entered on different days, or that he otherwise dissuaded further investigation. The record thus supports the conclusion that it would have been an unreasonable application of clearly established law for the state court to find Henderson’s performance objectively reasonable.
B.
The question of prejudice hinges on whether ■ Christian has shown “a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Again, the record provides a rather conspicuous answer. According to Henderson’s erroneous advice, Christian faced a mandatory life sentence, with the possibility of parole after 15 years, if convicted of any of the three counts against him. In reality, Christian faced a mandatory minimum sentence of 10 years (if the sentences ran concurrently), even if convicted of all counts. He pled guilty to a sentence of 28 to 40 years imprisonment without the possibility of parole for approximately 11 years.
Christian’s conduct reveals just how central Henderson’s erroneous advice was in his decision-making. As previously described, Christian expressly stated during plea negotiations the conditions under which he would accept a deal, as reflected *457-469 in a letter written by Henderson to the government. The letter provided:
[Christian] is willing to enter a plea under the following terms: ... (h) THERE WILL BE NO RECIDIVIST FILED!!!
J.A. 597. By the letter’s own terms, Christian was acutely aware of and concerned with the impact his two prior felonies could have on any sentence. More telling, Christian actually decided to reject the plea agreement on the morning of trial, and only accepted it a short time after he was erroneously reminded by Henderson that he faced the possibility of a mandatory life sentence if convicted of one of the counts.
Of course, as the majority points out, it is possible that Christian would have received a lengthy sentence if he had chosen to go to trial. But the Sixth Amendment right to a public trial does not exist solely when a trial would be in a defendant’s best interests. The record here compels a conclusion that it is reasonably probable Christian would have exercised this constitutional right if he received accurate advice.
I respectfully dissent.

 Still more on point, this Court more recently held in an unpublished decision that bad advice about the applicability of a recidivism statute can constitute ineffective assistance. United States v. Lewis, 477 Fed.Appx. 79, 82 (4th Cir.2012). In Lewis, counsel advised a defendant during plea negotiations that he faced a mandatory life sentence and was a career offender under the Federal Sentencing Guidelines because of two prior convictions. Id. at 80. The defendant, after some hesitancy, accepted the government’s plea bargain. Id. But under Ohio law, the prior convictions . did not trigger a mandatory life sentence or career-offender status. Id. at 81-82. This Court found counsel’s contrary advice to be “plainly deficient under Strickland.” Id. at 82. As we observed, "[h]ad [counsel] simply read the applicable federal statutes and correctly applied them to the facts of this case, they would have discovered their error.” Id.; see also Hammond v. United States, 528 F.2d 15, 17-18 (4th Cir.1975) (observing, before Strickland, that counsel’s incorrect advice about possible sentences constituted ineffective assistance).